MANUFACTURERS' FIRE AND MARINE INSURANCE COMPANY
*vs.* WESTERN ASSURANCE COMPANY.

Suffolk.   Nov. 14, 1887. — Jan. 3, 1888.   DEVENS & W. ALLEN, JJ.,
absent.

A policy of insurance against loss by fire was issued by an insurance company to a corporation, payable to "A., trustee for mortgage bondholders." By the terms of the policy it was to become void, if, without the assent of the insurer, any change should take place in title or possession. On the same day the insurance company reinsured one half of its risk, and received a policy made out on a printed blank form adapted to insurance on property directly. By the printed

provisions a sale or transfer of the property insured, or the entry of a decree of foreclosure, without the consent of the insurer, terminated the risk. Attached to the policy was a slip, also in print, as follows: "This policy to be subject to the same risks, conditions, valuations, indorsements, privileges, assignments, and mode of settlement as are or may be assumed or adopted by" the first company, "and the loss, if any, payable *pro rata*, at the same time and in the same manner as by said company." Subsequently, the mortgage was foreclosed, and the property sold. It was bought by a person representing the bondholders, to whom the first policy was assigned, with the assent of the company issuing it; but no notice was given to the company reinsuring the risk. A loss by fire afterwards occurred, and was paid by the first company. *Held*, that it could maintain an action on the policy of reinsurance for the amount thereby insured.

CONTRACT upon a policy of reinsurance. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, on agreed facts in substance as follows:

On October 27, 1884, the plaintiff issued a policy of insurance, numbered 264,895, on certain property of the Indianapolis Cotton Manufacturing Company, against loss by fire, for the term of one year from the date of the policy, "loss, if any, payable to George B. Yandes, trustee for mortgage bondholders, as his interest may appear." By the terms of the policy it was to become void, "if, without the assent in writing or in print of the company, any change shall take place in title or possession."

On the same day, the defendant issued to the plaintiff the policy declared on. This policy was made by filling out the blank form used by the defendant in insuring property directly, and not the form used for reinsurance, and by attaching to the policy a slip, called a reinsurance slip. On this slip was the following: "$2500 on its [the Manufacturers' Insurance Company's] liability as insurers under its policy No. 264,895, issued at its Indianapolis agency to Indianapolis Cotton Manufacturing Company for $5000, as follows. [Then followed a description of the property.] This policy to be subject to the same risks, conditions, valuations, indorsements, privileges, assignments, and mode of settlement as are or may be assumed or adopted by the Manufacturers' Insurance Company, and the loss, if any, and expense of adjustment, payable *pro rata* at the same time and in the same manner as by said company. Other reinsurance permitted." On a blank space in the policy were written these words: "It is understood and agreed that the Manufacturers'

Ins. Co. of Boston will retain at its own risk an amount upon this risk equal to this policy."

Then followed certain printed provisions, among which were these :

" 1. If, . . . . without the consent of this company written hereon, . . . . the property be sold or transferred, or upon the passing or entry of a decree of foreclosure, or upon a sale under a deed of trust, or if the property insured be assigned under any bankrupt or insolvent law, or any change take place in title or possession (except in case of succession by reason of the death of the assured), whether by legal process or judicial decree, or voluntary transfer or conveyance; or if this policy shall be assigned before a loss without the consent of this company indorsed hereon, . . . . this policy shall become void."

" 3. When property has been sold and delivered or is otherwise disposed of, so that all interest or liability for loss thereon by fire or otherwise on the part of the assured herein named has ceased, this insurance on such property shall immediately terminate."

" 7. The use of general terms or anything less than a distinct specific agreement clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction herein."

The property insured was on October 27, 1884, the property of the Indianapolis Cotton Manufacturing Company. It was mortgaged for over $40,000 to George B. Yandes, trustee, as security for certain negotiable bonds.

The plaintiff's policy was taken out by said cotton manufacturing company, in accordance with a covenant in said bonds, to insure the property mortgaged for the benefit of the mortgagee, but this was never communicated to the defendant company, and the premiums were paid by said cotton manufacturing company. Prior to December 6, 1884, a suit was brought to foreclose said mortgage; and, in pursuance of a decree made in said suit, a foreclosure sale of said property was made on December 6, 1884. At this sale, the property was bid in by Henry Schnull, trustee, on behalf of the-holders of the mortgage bonds aforesaid. The sum bid was less than the amount due under the mortgage. By the laws then in force in the State of

Indiana, the purchase by Schnull vested the title to the property in him, subject to a right on the part of the Indianapolis Cotton Manufacturing Company to redeem the property mortgaged by paying the amount due upon the mortgage, with interest, within one year after the date of the sale. Upon December 6, the policy issued by the plaintiff was assigned by the cotton manufacturing company, with the consent of Yandes, to Schnull, as trustee, and said assignment of the policy, and the change in the title and possession of the property insured, stated above, were both duly consented to, in writing, by the plaintiff company, the written consent being indorsed on the back of the policy issued by the plaintiff, but were not known or consented to by the defendant company.

On December 27, 1884, the property insured was damaged by fire, under such circumstances as to create a liability on the part of the plaintiff company under its policy. Notice of the loss was given by the assured to the plaintiff company on December 29, 1884, and a statement in writing in regard to the loss, in the form required by the plaintiff's policy, and sworn to by the insured, was rendered to the company on January 6, 1885, and Schnull did all things necessary to entitle him to the payment by the plaintiff company of the loss under said policy. The total amount of insurance on said property, including the plaintiff's policy, was $30,000. The plaintiff company duly adjusted with Schnull the amount of damage to the property insured at the sum of $24,000, and it was agreed that the immediate loss and damage to the property insured, estimated according to the actual cash value of the property at the time of the loss was $24,000. The plaintiff's portion of the total loss, namely, $4000, was on January 9, 1885, paid by the plaintiff to Schnull, as trustee. The plaintiff incurred expenses in the adjustment of said loss, amounting to seventeen dollars and fifty cents, and these expenses were reasonable and proper under the circumstances.

Notice of the fire and loss was given by the plaintiff to the defendant on Monday, December 29, 1885, the same day on which the notice was given to the plaintiff by Schnull, and proofs of loss, as required by the defendant's policy, were duly rendered by the plaintiff, and received by the defendant at the

Indianapolis office on January 10, 1885. The plaintiff retained, at its own risk, an amount equal to the defendant's policy. The plaintiff demanded from the defendant, on said January 10th, the payment of $2000, its proportion of the loss on the property insured, and $8.75, being one half the amount of the expenses incurred in the adjustment.

*W. C. Loring*, for the plaintiff.

*H. D. Hyde*, for the defendant.

KNOWLTON, J. The contract entered into by the defendant with the plaintiff differed materially from an ordinary contract to insure a general owner against damage to his property by fire. While in a sense it was an insurance upon property, it was strictly a contract of indemnity against risk under another contract which had been entered into by the assured. The assured was not the owner of the property at risk, and had no relation to it except as insurer under the original policy. In that relation it had an insurable interest in it, and could enter into any proper contract for the protection of that interest. *Eastern Railroad* v. *Relief Ins. Co.* 98 Mass. 420. But, manifestly, many provisions appropriate to an ordinary agreement with the owner of property for the insurance of it could have no proper application to the agreement made by these parties.

The defence relied on is that there was a change of title to the buildings and machinery referred to in the defendant's policy, and an assignment of the policy issued by the plaintiff upon them, and an assent by the plaintiff to that assignment, all without the consent of the defendant.

It appears upon inspection of the defendant's policy, and is agreed by the parties, that it was prepared upon a printed blank, commonly used in writing policies to insure against loss upon property by the owners of it. This blank contained stipulations making void the policy, if, without the written consent of the company, the subject of the insurance should be sold or transferred, or any change should take place in title or possession, or the policy should be assigned before loss ; and these stipulations appear in the policy declared on.

It is often doubtful how far provisions which relate to the conduct of an assured person as general owner of that which is the subject of the contract should be given effect, in a policy to

indemnify against a risk which the assured has taken upon the property of another. That can only be determined in a given case by a careful scrutiny of the different parts of the writing to ascertain its meaning. Whenever words are found in a contract which can have no proper application to the subject to which it relates, they cannot be regarded; and, not infrequently, the careless use of printed blanks compels recognition of this rule. The policy in this case contained many provisions which were originally intended to regulate the conduct of an owner in relation to his property before and after a possible fire. The nature of the risk against which it insured, if there were no special stipulation pertaining to it, would suggest troublesome questions with reference to the applicability of these provisions to this peculiar kind of insurance, some of which it might be necessary to decide. But, in connection with the statement of the risk, the following sentence was inserted, which relieves the case of this difficulty: " This policy to be subject to the same risks, conditions, valuations, indorsements, privileges, assignments, and mode of settlement as are or may be assumed or adopted by the Manufacturers' Insurance Company, and the loss, if any, and expense of adjustment, payable *pro rata* at the same time and in the same manner as by said company. Other reinsurance permitted."

By this language the defendant bound itself by what had been, and by what might be, assumed and adopted by the plaintiff, properly pertaining to the risk which it was reinsuring. This agreement rendered nugatory many printed portions of the policy in which it was inserted. This was special and peculiar, pertaining directly to the subject matter of the contract, and it controlled those parts of the policy which were inconsistent with it. It assumed knowledge on the part of the defendant of all the terms and conditions of the plaintiff's policy, and it implied that the plaintiff, as the original insurer, might properly " assume or adopt . . . . risks, conditions, valuations, indorsements, privileges, assignments, and modes of settlement," without materially changing the nature of the liability created by the original policy. It did not authorize the plaintiff to charge the defendant by the assumption of a new risk of a different character, or to materially enlarge the existing one. But it covered whatever an insurance

company, in accordance with the general usage of such companies in like cases, would do, in the proper performance of its duty, for the continuation of the same risk, having due regard to the rights and interests of both insurer and insured.

The plaintiff consented to that which continued its liability under the policy which it had issued. When the trustee of the mortgage bondholders, to whom the policy was payable, took measures to foreclose his mortgage, and the property was bought under a judicial sale by an agent of these bondholders, there was a change of title, although the mortgagor under the law of Indiana still had a year in which to redeem by paying the mortgage debt. It was provided in the policy issued by the plaintiff, that a change of title not assented to in writing by the company should render the policy void. Thereupon, to continue the insurance, the plaintiff assented in writing to this change, and also to an assignment of the policy, made by a mortgagor to the purchaser at the judicial sale, who represented the bondholders, and who afterward held the policy in the same interest as the mortgagee had done, to whom it was at first made payable.

The only change which occurred was hardly more than a technical transfer of the legal estate. The validity of the policy was preserved by the plaintiff's indorsement of consent upon it. The defendant, in the sentence which we have quoted, expressly agreed that its policy should be subject to "indorsements" and "assignments" upon the plaintiff's policy, to be afterward "assumed or adopted" by the plaintiff. The language chosen was apt to cover what the plaintiff did, and fully justified it. The defendant, therefore, cannot now be relieved from liability on the ground that a change in ownership which did not affect the risk was assented to by the plaintiff to prevent a forfeiture.

This conclusion not only results from a proper construction of the language of the parties touching this subject, but is consistent with the manifest purpose and spirit of their contract. The defendant agreed to assume half the risk of the plaintiff upon the buildings and machinery insured. It was expressly agreed that the plaintiff should retain at its own risk an equal amount under its own policy. Both parties understood that an insurance company, to do a successful business, must deal equitably with its patrons, and hold itself in readiness to consent to

changes in the situation and ownership of subjects of insurance which do not affect the risk, and which the necessities or convenience of policy-holders require. Contracts for reinsurance are properly made with reference to this recognized principle; and it is not unnatural that discretionary power should be given the original underwriter with reference to modifications of the contract which are commonly made, and which do not change its character. A partial guaranty for the proper exercise of that discretion may be obtained, as was done in this case, by requiring the reinsured company to continue to carry, on its own account, a part of the risk reinsured. The interests of all parties may be served, and their rights protected, by inserting in the contract a liberal provision, like that in the policy before us.

Courts of New York, and also of Maryland, in dealing with somewhat different questions under policies of reinsurance, have reached conclusions not unlike our own. *Jackson* v. *St. Paul Ins. Co.* 99 N. Y. 124. *Consolidated Ins. Co.* v. *Cashow*, 41 Md. 59.                         *Judgment affirmed.*