FANEUIL HALL INSURANCE COMPANY *vs.* LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY.

Suffolk. November 12, 1890. — January 10, 1891.

Present. FIELD, C. J., W. ALLEN, HOLMES, & MORTON, JJ.

*Insurance — Reinsurance of Risks — Assent to Alienation — Limitation of Action — Recovery of Expenses of Suit.*

If a policy of insurance provides that any assignment thereof without the assent of the insurance company shall be void, the insurer, upon reinsuring all its risks upon the same basis and subject to the same conditions as in the original contract of insurance, may, as between itself and the reinsurer, assent, in the absence of a stipulation to the contrary in the contract of reinsurance, to an assignment of the policy which results in no increase of the risk.

An action upon a policy of reinsurance was *held* not to be barred by the limitation period fixed in the original policy for bringing suit against the insurer.

In an action upon a policy of reinsurance to recover, besides the insurance money, the expense of an unsuccessful defence of a suit, of which the reinsurer had notice, and of the successful defence of another suit, of which the reinsurer had no notice, the former alone was *held* recoverable.

CONTRACT upon a policy of reinsurance, for insurance money paid by the plaintiff, and for the expenses of certain actions brought against it to recover the same. Writ dated June 2, 1888. The case was submitted to the Superior Court, and, after judgment for the plaintiff for the insurance money alone, to this court on appeal, on agreed facts, which appear in the opinion.

*J. O. Teele*, for the plaintiff.

*W. C. Loring*, for the defendant.

MORTON, J. It appears from the agreed facts, that in August, 1876, the German American Insurance Company, of New York, issued to one Marden a policy of insurance for five years upon an estate at Kittery, Maine. In October, 1878, that company procured reinsurance on this and other risks from the plaintiff. On June 10, 1879, the plaintiff entered into a contract of reinsurance with the defendant, which included the Marden and other risks, and on October 24, 1879, the defendant issued to the plaintiff its policy of reinsurance in accordance with this contract. Marden, having sold the property to one Chauncey, applied, on September 1, 1879, to one De Rochemont, who was agent of the German American Company at the time the policy was issued, to transfer it to Chauncey. De Rochemont filled out the blank on the back of the policy, and Marden signed it. De Rochemont also at the same time filled out the assent of the German American Company to the transfer, and signed it as their agent. He had at this time ceased to be the agent of the German American Company, but was general agent of the plaintiff. No notice was given to the defendant of this transfer, and the defendant did not know of it till after the loss, on April 2, 1880. It did not appear that the risk was affected in any way by the change of ownership or by the transfer. No question was made at the argument by the counsel for the defendant as to the validity of this transfer so far as the German American Company and the plaintiff company were concerned. It seemed to be conceded, and we think rightly, that the plaintiff was so far the agent of the German American Company that it could properly assent in the name of that company to the transfer. The property was totally destroyed by fire in April, 1880, causing a loss of $700. Due proofs of the loss were made by Chauncey to the German American Company, which forwarded them to the plaintiff, which in

turn sent them to the defendant. The defendant returned them to the plaintiff, denying its liability, and the plaintiff did the same with the German American Company. Chauncey subsequently recovered the amount of the loss with interest and costs from the German American Company by a suit in New Hampshire. Afterwards the plaintiff was compelled to pay the German American Company the amount paid by it to Chauncey, with the costs and expenses incurred by it in defending the suit. This action is brought to recover the sum so paid, with interest, and the costs and expenses incurred by the plaintiff.

It is said in a note to the agreed facts, that all these policies were ordinary blank forms. We understand that to mean the forms prescribed by our statutes. To each of the reinsuring policies was attached a rider, partly written and partly printed, describing the subject matter of the reinsurance, and containing certain stipulations relating to it. The ordinary blanks with riders attached may have been used, because of the supposed application of the provisions of the Pub. Sts. c. 119, § 139, which require all policies of fire insurance to be in the form there provided, but also provide that they may be modified by slips or riders attached thereto.

In the rider attached to the defendant's policy to the plaintiff the insurance was stated to be " against loss or damage by fire (subject to the conditions and stipulations which constitute the basis of this insurance) . . . on the property covered by their [the plaintiff's] several policies named in the schedule sheets now on file in the office of this company." In the sheets referred to was a list of the German American policies, giving as to each policy its number, the name of the insured, the property covered, the location and commencement of the risk, the term and termination of insurance, the unexpired time, and the amount, rate, premium, and unearned premium. It is not contended by the defendant that there was any error in any of these particulars except in the name of the insured. That was given as Marden, and the defendant maintains it should have been stated as Chauncey, although it was Marden when the contract of June 10, 1879, was made, and the policy of reinsurance expressly provides that the risks covered by it begin June 10th. Immediately succeeding the above quotation, the rider continued as follows : " It being

the intention of this company to assume directly and immediately all the rights and responsibilities of the said Faneuil Hall Insurance Company under and upon the policies above referred to, . . . and to indemnify the said company absolutely against all losses or damages arising under their policies issued by said company, enumerated in the schedule above referred to, at and from twelve o'clock at noon on the tenth day of June, 1879. This policy is subject to the same risks, conditions, mode of settlement, and in case of loss payable at same time and in same manner as the policies reinsured, it being the intent and meaning of this policy that the liability assumed hereby can in no way be extended to cover any insurance or liability of the Faneuil Hall Insurance Company which has not had consideration in the final adjustment between the two companies concluded by our draft on the Faneuil Hall Insurance Company, issued September 29th, 1879." The Marden policy was included and had consideration in the final adjustment between the two companies, — as the policy of Marden, however, and not of Chauncey.

The rider attached to the policy of the plaintiff to the German American Company, after stating that the insurance was " on the property covered by their several policies named in the schedule sheets now on file in the office of this company," continues as follows: " It being the intention of this company to assume directly and immediately all the rights and responsibilities of the said German American Insurance Company under and upon the policies above referred to, . . . and to indemnify the said company . . . absolutely against all losses or damages arising under their policies issued by said company, enumerated in the schedule above referred to, at and from twelve o'clock at noon on the third day of October, 1878. (1) This policy is subject to the same risks, conditions, mode of settlement, and in case of loss payable at same time and in same manner, as the policies reinsured."

The original policy to Marden contained the following provisions: " If the property be sold or transferred, . . . or any change takes place in title or possession (except in case of succession by reason of the death of the assured) whether by legal process or judicial decree, or voluntary transfer or conveyance; or if this

policy shall be assigned before the loss without the consent of the company indorsed hereon, . . . then and in every such case this policy shall be void." Substantially the same provision was in each of the blanks used for the reinsuring policies issued by the plaintiff and by the defendant.

The defendant contends that it is not liable, because it did not assent to the assignment from Marden to Chauncey, and had no knowledge of it till after the loss; that in cases of reinsurance it is for the reinsurer, and not the reinsured, to assent to the assignment of policies covered by the reinsurance; and that in the present case, both under the contract of June 10, 1879, and under the policy, it had the sole right to assent to the transfer. It also contends that the suit is barred by the lapse of the limitation period fixed in the blank used for the policy before it was begun; and that in any event the plaintiff cannot recover for the sum expended by it as counsel fees in the proceedings instituted or prosecuted against it by the German American Company.

In dealing with the questions thus presented, certain considerations are to be borne in mind. In the first place, Marden's contract for insurance was with the German American Company, and with that company alone. The policy contained no provision by which it could substitute another company for itself. No substitution could take place without the consent of Marden or his assignee; and neither Marden nor Chauncey agreed to the substitution of either the plaintiff or the defendant in the place of the German American Company, nor, so far as appears, knew anything of the transactions between these three companies. The company, therefore, to which Marden or Chauncey was to look in relation to matters pertaining to the insurance was the German American Company; and the rights and obligations of the original insurer and insured were and are to be determined by the policy issued to Marden, and by that alone.

In the next place, the contract between the plaintiff and the defendant, " while in a sense," as the court say in *Manufacturers' Ins. Co.* v. *Western Assurance Co.* 145 Mass. 419, 423, " it was an insurance upon property, it was strictly a contract of indemnity against risk under another contract which had been entered into by the assured." The defendant made no contract with the owner of the property. Its contract was with the plaintiff alone;

and that contract was to indemnify it absolutely against all losses and damages to which it might be subjected in consequence of injury by fire to the property covered by the policies enumerated in the schedule, and which had been taken into " consideration in the final adjustment between " the plaintiff and the defendant. Until the plaintiff was subjected to some damage by reason of a loss upon some one of the policies against which it had insured the German American Company, it had no claim upon the defendant. The contract between the plaintiff and the defendant being one of indemnity, it is obvious that many of the provisions contained in the printed blank would be inapplicable. Thus, at the very commencement of the blank is this provision : " This company shall not be liable beyond the actual value of the insured property at the time any loss or damage happens." But this does not measure the defendant's liability under the contract of indemnity ; under that it may be liable, not only for the amount of the original loss, but for the costs and expenses incurred by the German American Company in defending itself against Chauncey's suit, and which were paid by the plaintiff, and also for the costs and expenses incurred by the plaintiff in defending itself against the German American Company.

It is to be observed still further, that the contract of indemnity is based upon the contract of insurance between Marden and the German American Company ; and the defendant has a right to insist that the requirements of that contract shall be fulfilled in all respects, except so far as they may be waived by it, before it can be made liable. But this is very different from saying that, by force of the contract of indemnity or reinsurance, it is the one and the only one whose assent was to be given to the transfer of the policy, or is the one and the only one which is to do the acts which the policy provides the insurer is to do. The defendant has also the right to insist that the risk shall not be enhanced, except by its consent, by any act of the original insurer or its agent. This is implied from the nature of the contract. Full effect is thus given to the original contract of insurance and to the contract of reinsurance or indemnity, and the rights of all parties are duly protected. Now, as already stated, neither Marden nor Chauncey agreed to substitute the plaintiff or the defendant for the German American Company. When Marden

wished to transfer his policy, that was the company for him to go to. The policy provided that he should procure its assent, not that of any other company. He could not be compelled to procure the assent of any other company. And this was true of all the policy holders of that company. Moreover, there was no provision either in the policy received by the German American Company from the plaintiff, or by the plaintiff from the defendant, or in the contract between the plaintiff and the defendant, that the German American Company or its agent should not assent to the transfer of policies. The insurance companies must be held to have entered into their respective contracts with the knowledge that, as matter of law, neither Marden nor any other German American policy holder could be compelled to procure the assent of any other company, and with the knowledge that, in the ordinary course of business, applications of this kind would be made to that company by its policy holders, and therefore to have contemplated and understood, in the absence of any contrary provision, that the original insurer or its agent was to give the required assent to transfers, to receive proofs of loss, and to attend to what may be called the local conditions of the policy, subject in all cases to the implied condition that nothing should be done without its assent to enhance the risk. We do not, therefore, think there is anything in the nature of the contract of reinsurance or of indemnity inconsistent with the power of the original insurer or its agent to assent to the assignment of the policy. *Manufacturers' Ins. Co.* v. *Western Assurance Co.* 145 Mass. 419. *Consolidated Ins. Co.* v. *Cashow,* 41 Md. 59. *Fire Insurance Association* v. *Canada Ins. Co.* 2 Ontario, 481, 495. *Jackson* v. *St. Paul Ins. Co.* 99 N. Y. 124.

The defendant also contends, that, under the contract of June 10, 1879, it was to attend to all changes in regard to outstanding policies, and for that reason it was the party whose assent should have been given to the transfer. But without considering, if that were so, how the defendant has been injured by the act of the plaintiff, or what the defendant's remedy would be, we do not think that is the construction or was the intent of the contract. Although the contract bears date June 10, 1879, it would seem from its wording that it must in fact have been executed subsequent to that time. It describes the risks which are insured as

those "which were in force on the tenth day of June, 1879, at twelve o'clock at noon, or which have been assumed or taken by them since that date." By it the defendant also agrees to pay all losses "which have happened since the tenth day of June, 1879, at twelve o'clock at noon." But however that may be, it is evident that the parties contemplated that some time would necessarily elapse before all the particulars connected with the risks insured could be ascertained and put in satisfactory form, and that in the mean time the plaintiff should conduct its business as it had conducted the same before. Thus, it is expressly stipulated that the defendant shall insure not only the risks in force at twelve o'clock at noon on the tenth day of June, but also those " which shall be assumed or taken by their the [plaintiff's] agents prior to receipt of notice to discontinue all business for said party of the second part, the said party of the second part the [plaintiff] agreeing to give such notice with all reasonable diligence and despatch." There is nothing from which we can infer that this notice was not given " with all reasonable diligence and despatch." Indeed, the final draft for the balance due it was not drawn by the defendant on the plaintiff till September 29, 1879, and its policy was not issued till October 24, 1879 ; in one case nearly a month, and in the other nearly two months, after the assent to Marden's transfer. Under the concluding provisions of the contract, it is also clear that the plaintiff might cancel policies, as in the ordinary conduct of its business. The contract contains no stipulation that the plaintiff shall not assent to the transfer of policies, nor do the business that would naturally come to it to be done in connection with its policies. The defendant relies on the following provision : " The said parties of the first part are hereby constituted and appointed agents of the said party of the second part for the purpose of doing, in regard to the outstanding policies assumed under this agreement, all acts that may be necessary to cancel, replace, or transfer said policies according to their terms or conditions." But this does not say that the defendant shall be sole agent, and it is almost inconceivable that, if the parties had so intended, they would not have said so. And this view is strengthened by the fact, that, although the defendant had the power of cancellation, it is plain under the concluding provisions that the plaintiff also

had it.   There is nothing in the nature of the authority given
to the defendant that is exclusive, or that is inconsistent with
similar acts on the part of the plaintiff.

Nor do we think that the provision in the rider attached to
the defendant's policy, in regard to its assuming the plaintiff's
rights and responsibilities under and upon the policies named in
the schedule, can avail the defendant.   The policy was not issued
until October 24, 1879, and was then issued pursuant to the con-
tract of June 10 previous.   The assent to Marden's transfer was
given on September 1, 1879, when the contract of June 10 was in
force, under which the plaintiff could properly agree to the trans-
fer.   It would certainly be singular if the defendant could escape
liability on the ground that the policy invalidated an act which
the contract permitted the plaintiff to do.   At the most, leaving
Marden's name in the schedule sheets, instead of inserting that
of Chauncey, appears to have been simply a mistake, which
worked no harm to the defendant.

A like conclusion must be reached concerning the stipulation
in the rider, that " this policy is subject to the same risks, condi-
tions, mode of settlement, and in case of loss payable at same time
and in same manner, as the policies reinsured."   As already ob-
served, many of the provisions in the original policy are wholly
inapplicable to a contract like this.   Further, we cannot for this,
any more than for the reason previously considered, hold that
the effect of the policy was to invalidate what had been rightly
done under the contract of June 10.   Again, we think this pro-
vision means, not that the various terms in the reinsured policies
as to risks, conditions, mode of settlement, and time and manner
of payment in case of loss, are incorporated with and form a part
of the contract of indemnity, — so that, for instance, claims by
the plaintiff upon the defendant shall be settled by arbitration,
or the plaintiff shall submit its books to the inspection of the de-
fendant, or shall bring suit within one year, — but that the rein-
sured or original policies furnish in these and other particulars
the basis upon which the contract of indemnity stands, and that
in all dealings with the original insured the provisions of the
policy issued to him are to be observed.

For the reasons thus indicated, and without going over them
again, we are also of opinion that the defendant's contention

that this action is barred by the limitation period fixed in the original policy for bringing suit against the German American Company, is not valid.

The claim made by the plaintiff for counsel fees, as part of the damages covered by the defendant's indemnity, consists of $200 paid by it in defending itself successfully against a suit brought in the name of Chauncey, but prosecuted by the German American Company, and of $300 paid by it in defending itself against the suit brought by the German American Company after that company had paid the amount recovered against it in New Hampshire. Notice was given by that company to the plaintiff of the suit brought in New Hampshire against the German American Company by Chauncey, and the plaintiff was requested to appear and defend that suit, and notified that if it did not do so the German American Company would defend at the plaintiff's cost, and would hold it liable for any judgment that might be recovered therein, and for all costs, damage, or expense which it might incur in the defence thereof. A like notice was given by the plaintiff to the defendant. Neither the plaintiff nor the defendant appeared or defended. So far as appears, no notice was given to the defendant of the suit brought by Chauncey against the plaintiff. Previous to the suit of Chauncey against the German American Company, the proofs of loss had been forwarded by the plaintiff to the defendant, which had returned them to the plaintiff, denying its liability. The judgment obtained in New Hampshire by Chauncey against the German American Company was clearly not conclusive upon the plaintiff, and we cannot say, as matter of law, that it was unreasonable for it to defend against the suit brought in this State by that company. The defendant had had notice of the claim which the German American Company made upon the plaintiff, and also of the suit brought against that company by Chauncey; and, in view of its denial of liability, it was bound to assume that the plaintiff would take such steps as were reasonable to enable it to enforce its rights against the defendant. If the defendant wished to save itself from liability for expenses and costs, it should have taken some action, and given some notice to the plaintiff. It did not do so, and we think that it is liable for the sum of $300 paid by the plaintiff

to defend itself against the German American Company.  As to the $200, no notice was given to the defendant of the suit in which that expense was incurred, and it had no reason to suppose that Chauncey would make any claim directly upon the plaintiff.  Besides, the plaintiff was successful, and, however far short they may fall in actual practice, in theory the costs which the plaintiff recovered are supposed to be full indemnity for its trouble and expense.  *Henry* v. *Davis*, 123 Mass. 345.

The judgment of the Superior Court should be increased, therefore, by the sum of $300, with interest.

*Judgment accordingly.*