IMPERIAL FIRE INS. CO. OF LONDON v. HOME INS. CO. OF NEW ORLEANS.

ROYAL INS. CO. OF LIVERPOOL v. SAME.

(Circuit Court of Appeals, Fifth Circuit. June 17, 1895.)

Nos. 370 and 371.

1. REINSURANCE—DESCRIPTION OF RISK.

The H. Ins. Co. applied to the I. Ins. Co. and the R. Ins. Co. for reinsurance of a part of its risk upon cotton. Thereupon policies were issued to it by the I. and R. companies reinsuring part of its risk on the property, described by a slip, pasted on the policies, as "cotton in bales their own or held by them in trust or on commission"; such slip also containing an agreement that the company should be liable only for such proportion of the loss as the sum insured bears to the cash value of the whole property insured. Another slip was also attached to the policies, providing that they should be subject to the same risks, conditions, valuations, indorsements, assignments, and mode of settlement as were or should be assumed or adopted by the H. Ins. Co., and the loss, if any, should be payable pro rata at the same time and in the same manner as by that company. The policies of reinsurance ran for a year, and many of the policies issued by the H. Co. were issued subsequent to the reinsurance, as was contemplated at the time. Part of such policies contained the coinsurance clause, and part did not. *Held*, that the limitation contained in the first-mentioned slip had no application to reinsurance; that, by the provision in the second slip that the policies of reinsurance should be subject to the same risks, etc., as were assumed by the H. Co., the reinsuring companies agreed to be bound by any contract it might make. and that such reinsuring companies were responsible for the loss suffered by the H. Co. on its policies without the coinsurance clause, as well as those containing it. Per McCormick, Circuit Judge, and Bruce, District Judge.

2. SAME.

*Held*, that the words "subject to coinsurance clause," in the applications of the H. Co., were a material part of the description of the risk upon which reinsurance was sought, and that the reinsuring companies were not liable for the loss sustained by the H. Co. on policies not containing that clause. Per Pardee, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

These were actions by the Home Insurance Company of New Orleans against the Imperial Fire Insurance Company of London and the Royal Insurance Company of Liverpool upon policies of reinsurance. Judgment was rendered for the plaintiff in the circuit court. Defendants appeal. Affirmed.

E. H. Farrar, B. F. Jonas, E. B. Kruttschnitt, Hewes T. Gurley, W. A. Blount, A. C. Blount, Jr., and D. B. H. Chaffe, for appellants.

R. H. Browne, B. F. Choate, and Thomas J. Semmes, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

McCORMICK, Circuit Judge. These cases will be considered together in this opinion. The appellants, the Royal Insurance Company of Liverpool and the Imperial Fire Insurance Company of London, will be referred to, respectively, as the Royal and the Imperial, and the Home Insurance Company of New Orleans, the appellee in each case, will be referred to as the appellee.

In November and December, 1891, the appellee applied to the appellants for reinsurance, and duly received the respective policies which are the subjects of this litigation. The applications to the Royal were made on printed forms, with certain blanks filled in writing. The application to the Imperial does not appear to have been in writing, but was substantially to the same effect as those made to the Royal, the features of which material to note here were and are that the applicant warranted to retain $25,000, and described the property applicant had insured as "cotton subject to coinsurance clause." The Royal has now abandoned any contention on the retention clause. The Imperial still insists on its construction of that clause, but the proof abundantly supports the action of the circuit court on the issues made on the warranty by the Home to retain $25,000 or more on the risk. During the life of these policies of coinsurance, a large amount of the cotton was destroyed by fire. At the time of the fire, the appellee had written and in force, on the cotton subject to the fire, policies with the coinsurance clause to the amount of $97,700, and policies without the coinsurance clause to the amount of $25,000. The loss on the cotton covered by the first-named class of these policies was $38,707.58, and the loss on the other exceeded the amount of the policies. There is substantially no issue as to what were the actual facts as to the contracts and the loss; and there can be no dispute that, if the contention of the appellee as to the construction of the contract of coinsurance is correct, the decree of the circuit court should be affirmed. Having found that its construction of the retention clause is correct, it only remains to consider the other clauses of the policies on which issue is joined. The judgment and decree of the circuit court construe these clauses in favor of the appellee, and a majority of the judges of this court concur in that conclusion. The questions here involved are so well stated, and the authorities, so far as any authority exists bearing on the question, are so soundly applied, and the argument so full, fair, and well expressed in the brief of counsel for the appellee, that, in justice to ourselves and to him, we must adopt and use his reasoning almost literally, and to substantially the full extent that he has advanced it, there being left little or nothing to add to or qualify what he has said:

It is urged that the defendants are not liable for the losses paid by the plaintiff to Frankenbush and Borland, because the policies issued to them did not contain the coinsurance clause. It is urged that the two slips pasted on the policies of reinsurance are descriptive of the risk assumed by the reinsurer. The defendants are driven to take this ground because the reinsurer has insured the liability of the original insurer, whatever that be, unless in the contract of reinsurance there can be found some clause whereby the reinsurer stipulated that it assumed no risk, unless the original insurance contract contained the co-insurance clause. It is observed that the policies of reinsurance bear the following dates: That of the Imperial is dated November 23, 1891, and those of the Royal dated November 12, 1891, and December 26, 1891. The Frankenbush and Borland policies are dated: October 12, 1891; November 19, 1891; February 9, 1892; February 11, 1892; February 26, 1892. Only one of the policies is dated before those of the Royal, and only two are dated before that of the Imperial. Three of them are dated after all of the policies of reinsurance were issued. The description of the risk in the reinsurance policies is that the Home Insurance Company are insured on $10,000 of their liability as insurers under their various policies, issued to various parties, for various

amounts, and covering as follows: Ten thousand dollars on cotton in bales their own or held by them in trust or on commission while contained in the yard No. 1, Shippers' Press, New Orleans, La. A part of this description is clearly inapplicable to the reinsurance, for the words "their own or held in trust or on commission" have no meaning as between the insurer and the reinsurer. The cotton itself was not the subject of insurance as between the insurer and reinsurer, but as between them the subject of insurance was the liability of the insurer, as an insurer, on cotton in yard No. 1, Shippers' Press, owned or held in trust by the original insured. Now, this policy was issued to last for a year, and was intended to cover any liability that the insurer during the year might assume as insurer of cotton in the designated press. It was not restricted to liability then existing, but extended to future liability which might be incurred by the Home Insurance Company on cotton in the Shippers' Press, yard 1. What was the stipulation as to the risk assumed by the reinsurer? He agreed to cover any risk which the insurer might be willing to take, for that is the meaning of the words, "This policy to be subject to the same risks, conditions, valuations, indorsements, and modes of settlement as are or may be assumed and adopted by the reinsured, and the loss, if any, payable pro rata at the same time and in the same manner as by said company," etc. Any printed stipulation having reference to the property itself, or the cash value thereof, cannot be applied to the contract of reinsurance between the reinsurer and the reinsured, because the property is not the subject-matter of their contract.

It is true that the contract of reinsurance must apply to the subject-matter of insurance specified in the original policy; that is to say, to cotton in Shippers' Press, yard 1, and to risks of the same kind as those specified in the original policy. In other words, if the original policy is a contract of insurance against loss by fire, the reinsurance must be against loss by fire, and not against loss by tempests or storms on land or at sea. But the specific risk in the policy of reinsurance need not be identical with that in the original policy; that is to say, an original insurance may be effected on a vessel for six months, with use of all of the ports of the world except those of Texas. The reinsurance may be for a single voyage within the bounds not prohibited, and for a less amount. This was decided in the case of Philadelphia Ins. Co. v. Washington Ins. Co., 23 Pa. St. 250. Such is the law in the absence of stipulations contained in the lower printed slip annexed to the policies sued on. That slip provides that this policy is to be subject to the same risks, conditions, and valuations, indorsements, etc., that are or may be assumed or accepted by the original insurer. Hence reinsurance under these policies is reinsurance against any of the fire risks assumed by the original insurer, in any of its policies on cotton in Shipper's Press, yard 1, and on the same conditions as those contained in any of the original policies issued by the original insurer, to the original assured, on cotton thus located. This clause gives to the original insurer the privilege of taking such risks on cotton in the designated place as it may choose. The reinsurer says: "I will reinsure whatever contract you make, and, to protect me from any imprudence on your part, you must retain at least $25,000 on the same risk." This is the view taken of this clause by the supreme court of Massachusetts in Manufacturers' Fire & Marine Ins. Co. v. Western Assur. Co., 145 Mass. 424, 14 N. E. 632. The court said: "It is often doubtful how far provisions which relate to the conduct of an assured person as general owner of that which is the subject of the contract shall be given effect in a policy to indemnify against a risk which the assured has taken upon the property of another. * * * The nature of the risk against which it insured, if there was no special stipulation pertaining to it, would suggest troublesome questions with reference to the applicability of these provisions of this peculiar kind of insurance, some of which it might be necessary to decide." But, in connection with the statement of the risk, the following sentence was inserted, which relieves the court of this difficulty: "This policy to be subject to the same risks, conditions, valuations," etc., "as are or may be assumed or accepted by the insured company," etc. The language of the clause is almost identical with the language used in the lower slip or rider attached to the policies sued on in these cases. The court said: "By this language the defendant bound itself by what had been done, and by what might be assumed and adopted by the plaintiff, properly pertaining to the risk which

it was reinsuring. This agreement rendered nugatory many printed portions of the policy in which it was inserted. This was special and peculiar, pertaining directly to the subject-matter of the contract, and it controlled those parts of the policy which were inconsistent with it. It assumed knowledge on the part of the defendant of all the terms and conditions of the plaintiff's policy, and it implied that the plaintiff, as original insurer, might properly assume or adopt risks, conditions, etc., without materially changing the nature of the liability created by the original policy." This was a case of reinsurance of a fire risk on a particular factory, which had been assumed by the reinsured company, and the number of the policy designating the risk was inserted in the contract of reinsurance. The court of appeals of New York, in the case of Jackson v. Insurance Co., 99 N. Y. 129, 1 N. E. 539, confirms the doctrine of the Massachusetts court. Justice Danforth says: "The reinsurer had no property right in the subject insured by them, but, by underwriting the policy, rendered themselves liable to loss from fire, and they thereby acquired an insurable interest to the extent of that liability. But it was in relation to the peril only against which they had insured. It is that to which their request for reinsurance applied. By it they in effect say, as insurers: 'We have undertaken to carry a risk which as taken by us is as follows: It amounts to $4,500, and we ask indemnity against a portion of it.' It is not pretended that they did not state the risk literally as they had taken it, and it was in fact described in their policy in terms similar to those used in the policy of reinsurance. The case may, indeed, be taken in like manner as if they had exhibited to the defendants the original policy, and the defendants had indorsed upon it an assumption of the risk of $1,500." In both of these cases the reinsurance applied to a specific original policy of insurance, designated by number in the contract of reinsurance. In those cases the original contract of insurance had been made before the reinsurance contract. In this case most of the original insurance was subsequent to the contract of reinsurance, and none of the policies of insurance originally issued, prior to the contract of reinsurance, are designated by numbers or otherwise. The original policies of insurance are not only not described in the contract of reinsurance, but the contract covers a period of one year, and it contemplated subsequent insurance. It also contemplated that existing policies might expire, and new policies be made. Other insurance was permitted by the reinsurer.

How was it possible to describe these future contracts of insurance, intended to be covered by the reinsurance? They could not be described except as to the species of property, and the locality thereof, and therefore the reinsurer said to the reinsured: "We will protect you against any loss on cotton in Shipper's Press, yard 1, which you may assume as insurer; and we agree to accept the terms and conditions you may make with your customers, but you must not throw the entire risk on us. Although we permit you to make other reinsurance, yet you must retain, as insurer, a liability of at least $25,000 on the risk which we take; and, in case of loss, we fix the proportions in which we are to make payment. For that purpose, we put in the following stipulation: 'This policy to be subject to the same risks,' etc., 'as are or may be assumed by the reinsured company, and the loss, if any, payable pro rata at the same time and in the same manner as by said company,'" etc. The court of appeals of New York, in Blackstone v. Insurance Co., 56 N. Y. 107, say that, "by virtue of this clause, the defendant is not bound to pay the full amount reinsured by its policy, but only such proportion of the amount of the loss as is in the ratio of the amount of reinsurance to the amount originally insured. Thus, the defendant's reinsurance being for half of the amount of the original insurance, the defendant is to pay half of the loss." The agreement to pay pro rata with the original insurer whatever liability may be assumed is entirely inconsistent with the clause providing for a different basis of liability, and it has no application to reinsurance, which does not cover property, but covers only the insurable interest of the reinsured, growing out of his liability as insurer. In the Massachusetts case (145 Mass. 424, 14 N. E. 632) it was held that the clause requiring the written consent of the company to a change in the title or possession of the property insured had no application to a reinsurer, and no notice of such change need be given to him. It sufficed if such change was assented to by the original insurer. In Uzielli v. Insurance Co., 15 Q. B. Div. 13, it was held that the reinsurer was not en-

titled to notice of abandonment, though the primitive insured may have abandoned to his insurer. The court quote Phillips on Insurance and Hastie v. De Peyster, 3 Caines, 196. In that case Chief Justice Kent says: "The reinsurer has no connection or concern with the first insurance, and is at all times bound to *indemnify his own assured when the other can show that he has been damnified in consequence of the first insurance.*" Mr. Justice Livingston says there was no privity at all between the primitive assured and the reinsurer. In the Uzielli Case, just referred to, it was held that the suing and laboring clause in an original insurance policy and in the policy of reinsurance has no application to reinsurers. That clause provides that, in case of loss or misfortune, it shall be lawful for the assured, his agents, factors, etc., to sue, labor, and travel in and about the safeguard, defense, and recovery of the goods, etc., and the ship, without prejudice to this insurance, to the charges whereof the insurers agree to contribute. In that case the reinsurance was for £1,000, but the loss, as between the insurer and the assured, was 112 per cent., because the loss was 88 per cent., and the expenses incurred, when added to the loss, made the original insurer responsible for 112 per cent., that is to say, 88 per cent. of the sum underwritten, plus the expenses. The court said: "The plaintiffs seek to recover 88 per cent., *which the French company have paid for a total loss,* and they seek to recover more under the suing and laboring clause in the policy. Now, in the policy sued on, the ship, as between the plaintiffs and the defendants, is insured at £1,000. The policy itself is declared to be a reinsurance, and also it contains the suing and laboring clause. If it were not for the clause whereby the defendants were rendered subject to the same terms, clauses, and conditions as were contained in the original policy, and were to pay as might be paid thereon, the plaintiffs, in my opinion, would be entitled to recover only 88 per cent., etc. * * * The plaintiffs rely, however, upon the special clause, whereby the defendants have undertaken to pay as the French company shall have paid; and under this clause they are entitled to recover any sum not exceeding £1,000." The special clause referred to is, in the main, similar to that contained in the lower slip of the policies sued on. The defendants in this English case were reinsurers of the French company, which itself was a reinsurer of English underwriters. In this case it will be observed that, though the suing and laboring clause was a part of the policy of reinsurance, the court held it had no application to the reinsurers. Why? For no other reason than that the reinsurer does not insure the owner of the ship, but the insurable interest of the insurer. Hence that interest is the loss that the insurer might suffer under the policy issued by him, and the master of the rolls said the suing and laboring in that case for the safeguard of the ship was not by the assured under the policy of reinsurance, but by the assured under the original policy, for the ship was not insured under the reinsurance policy. So totally distinct is the original insurance from the reinsurance that the premium of reinsurance may be less or greater than that of the original insurance, as well as the extent of the risk.

The most instructive case on the subject is the most recent,—Faneuil Hall Ins. Co. v. Liverpool & L. & G. Ins. Co., 153 Mass. 70, 26 N. E. 244. The reinsurance policy in that case contained a clause similar to that in the lower slip attached to the policies sued on, to wit: "This policy is subject to the same risks, conditions, mode of settlement, and, in case of loss, payable at the same time 'and in the same manner, as the policies reinsured." The court said that many of the provisions in the printed blank would be inapplicable, and quotes one provision at the very commencement of the blank, viz.: "This company shall not be liable beyond the actual value of the insured property at the time any loss or damage happens." This, said the court, does not measure the defendant's liability under the contract of indemnity. Under that, it may be liable, not only for the amount of the original loss, but for the costs and expenses incurred by the German-American Company, in defending itself against Chauncy's suit. Again, in speaking of the provision quoted above, the court says: "We think this provision means, not that the various terms in the reinsured policy as to the risk, conditions, mode of settlement, and time and manner of payment in case of loss are incorporated with and form part of the contract for indemnity,—so that, for instance, claims by the plaintiff upon the defendant shall be settled by arbitration, or the plaintiff shall submit its books to the inspection of the defendant, or shall bring suit within one year,—but

that the reinsured or original policies furnish in these and other particulars the basis upon which the contract of indemnity stands, and that in all dealings with the original insured the provisions of the policy issued to him are to be observed." The object of the coinsurance clause is to make the owner of the property carry a part of the risk, unless he insures to the full value of his property. The purpose is to compel the owner of property to take out policies to the full value of his property, and pay premiums on such full value; whereas the retention clause in policies of reinsurance is intended to discourage and prevent full reinsurance, and is, in fact, a coinsurance clause as between the reassured and his reinsurer; for the retention clause is a contract between the insurer and his reinsurer that the original insurer will not effect reinsurance to the extent of his entire liability, but will carry himself a part of that liability, and the part to be carried was fixed in this case at not less than $25,000. Hence the retention clause—the coinsurance clause as between the reassured and the reinsurer—is intended to accomplish an object totally different from the object intended to be secured by the coinsurance clause in the primitive policy issued to the assured.

It is therefore plain that the clause in the upper slip or rider attached to the policies of reinsurance has no application whatever to reinsurance. That clause provides "that this company shall be liable for only such proportion of the whole loss as the sum hereby insured bears to the cash value of the property hereby insured." No property whatever is insured by the reinsurer. His policy applies to a liability of the original insurer, arising out of his insurance of the property, and this liability is the incorporeal subject-matter of the reinsurance contract, and is collateral to the property. If the above-quoted clause were applicable to reinsurance, the liability of the Imperial Company on its policy for $10,000 would be only $833.33, or one-twelfth thereof, inasmuch as the amount insured ($10,000) is one-twelfth of $120,000, which sum, for the purpose of illustration, is assumed to be the total value of the cotton insured. This result is almost absurd in the face of an agreement contained in the policy of reinsurance that "this company will be liable in case of reinsurance for the loss sustained only in the proportion which the sum reinsured shall bear to the whole sum covered by the reinsured company." Besides, there is an express pro rata clause in the lower slip attached to the policy which provides for pro rata payments to be made by the reinsurer, at the same time and in the same manner as by the Home Company. It is apparent that, in case of reinsurance, the value of the property is abandoned as a test of proportionate liability, and in place thereof is substituted the proportion which exists between the amount of insurance carried by the reinsurer and the total amount of insurance carried by the primitive insurer. This is necessarily the case, as the property is not insured by the reinsurer; the liability of the primitive insurer, in respect of the property, being the subject-matter of the reinsurance contract. The coinsurance clause cannot be said to be descriptive of the risk as between the reassured and the reinsurer, because the risk which the reinsurer takes is the risk described in the original policy, whatever that may be, unless some clause can be found in the reinsurance contract which expressly varies that description. We find no clause in the reinsurance policies which varies or modifies the risk as assumed by the original insurer. The complaint is not that any clause in the reinsurance policy has been violated by the Home Company, but that the Home Company did not insert the coinsurance clause in its contract with the primitive assured.

This reduces the case to one of misrepresentation or concealment. No averment in the answers is made on which such a defense can be based. Indeed, such a defense is inconsistent with the answers, which assert that the coinsurance clause is contained in the policies sued on, and treat as such that part of the policy which declares that the insurer shall be liable for only such proportion of the whole loss as the sum insured bears to the cash value of the whole property at the time of the fire. The answers insist that all the terms of the contract between the parties are to be found in the policies of reinsurance. We need not, therefore, go beyond these policies to determine the rights of the parties, and hence no case of concealment or misrepresentation is presented by the pleadings.

The defendants claim that the clause just quoted is the coinsurance clause, and that their liability is for only "such proportion of the whole loss as the

sum insured bears to the cash value of the whole property insured." It appears to us that this clause has no application to reinsurance, and is inconsistent with the pro rata clause, which provides that the reinsurance is subject to the risk specified in the original policy, and that the reinsurer is to, pay the loss pro rata with the reinsured.

It is urged that one of the applications for reinsurance expressly asks for reinsurance subject to coinsurance, and appellants insist that this is not only a material but the most material of the descriptions of the risk, "because, at the time when the contracts of reinsurance in this cause were entered into, the market rate charged in the city of New Orleans upon policies on cotton, and containing the coinsurance clause, was one per cent., whilst policies not containing such a clause upon the same product commanded a premium of one and one-half per cent. In other words, it cost fifty per cent. more to obtain insurance without the coinsurance clause than with it." Let us see. Frankenbush and Borland had, to use round numbers, $60,000 worth of cotton. They lost, still using round numbers, $30,000 worth of their cotton. On this they had $25,000 of insurance without the coinsurance clause, for which they paid 1½ per cent. premium, amounting to $375, and got $25,000 on their policies. Now, with that amount of property and that amount of loss, how much coinsurance must they have had to get $25,000 indemnity? The indemnity received was five-sixths of the loss. To have received a like amount under coinsurance policies, they must have had policies written nominally for five-sixths of the value of the property insured; that is to say, to the amount of $50,000, which at 1 per cent. on the amount nominally written would have cost them $500 instead of $375. This is basing our calculation on the facts of this case. The proof shows that Mr. Borland is a director in the Home Company. It also shows that he would not accept coinsurance policies on his cotton at risk. It shows that another firm of cotton factors, who took more insurance in the Home on cotton than all other persons combined, would not take coinsurance policies. It is not contended or suggested that they are not as binding according to their terms as other policies, or that they present any difficulty in the matter of adjustment. We incline to think that those who preferred policies without the coinsurance clause were justified in resting their choice on the knowledge they had that such insurance was the cheapest. Therefore, in addition to the reasoning of Mr. Semmes, which we have above adopted, we suggest that, considered as a representation, the materiality of the words "subject to coinsurance" is not made to appear by the proposition we have quoted from the brief of appellants' counsel, which is the proof text of their discourse. It seems to be clear that the purpose of the coinsurance clause is to stimulate full insurance. This being the chief object, insurance companies can hardly claim that it operates to lessen the moral hazard. It manifestly cannot affect the physical hazard. The fact that some of the appellee's policies did not have the coinsurance clause cannot therefore be relied on as a concealment, though "all the authorities, concerning matters of insurance, concur in the position that, if the concealment is material, it will avoid the policy, notwithstanding the assured did not in-

tend to commit any fraud.    The suppressio veri may happen by mistake, and be entirely without fraudulent intention; still the underwriter is deceived, and the policy is thus void, for the very plain reason that the risk run is really different from the risk understood and intended to be run at the time of the agreement.    A concealment which is only the effect of accident, inadvertence, or mistake, is equally fatal to the contract as if it were designed.    The principle is that if the party proposing insurance conceals anything which may influence the rate of premium which the underwriter may require, although he does not know that it would have that effect, such concealment entirely vitiates the policy.    By a material fact is meant one which, if communicated to the underwriter, would induce him either to decline the insurance altogether, or not to accept it unless at a high premium."    Ang. Ins. § 175.    Within the meaning of the authorities, it was not material, even if it can have relation to the contracts of reinsurance herein involved.

The decree of the circuit court in each case is affirmed.

PARDEE, Circuit Judge (dissenting).    In a reinsurance policy the description of the risk reinsured is just as material as is the description of the property insured in an ordinary policy.    False representations affecting the risk reinsured have the same effect as false representations affecting the property insured.    There were two several applications made by the Home Insurance Company to the Royal Insurance Company upon which the policies in this suit were issued. The first, in November, 1891, was for reinsurance, wherein the exact risk insured by the Home and desired to be reinsured was precisely set forth, as follows:

"4,524,712.

"On $10,000 of their liability as Insurers under their Policy No. —— VARIOUS —— Issued to —— VARIOUS PARTIES —— For $—— VARIOUS —— for a term of 1 YR. from NOV. 12/95.  Rate 1%, and covering as follows:

"$10,000 on cotton in bales, their own or held by them in trust or on commission, while contained in the Yd. 1, Shippers' Press.

"And it is agreed and understood to be a condition of this insurance that this policy shall not apply to or cover any cotton which may at the time of loss be covered in whole or part by a marine policy; and it is further agreed to be a condition of this policy that only actual payment, by check or otherwise, for cotton purchased, shall constitute delivery of cotton from the seller to the buyer; and it is further agreed that tickets, checks, or receipts delivered to bearer shall not be considered as evidence of ownership ; *and it is further agreed that this company shall be liable for only such proportion of the whole loss as the sum hereby insured bears to the cash value of the whole property hereby insured at the time of fire.*

"Other insurance permitted without notice, until required.

"Attached to and made a part of policy No. —— of Home Insurance Company of New Orleans.

"——————————

"This policy to be subject to the same risks, conditions, valuations, indorsements, assignments, and mode of settlement as are or may be assumed or adopted by the HOME INSURANCE CO., and the loss, if any, payable pro rata, at the same time and in the same manner as by said company.

"REINSURED CO. RETAINS $25,000.                                H."

v.68F.no.7—45

The other, in December, 1891, was on a different form, and called for reinsurance on various policies issued and to be issued by the Home "on cotton yard 1, Shippers' Press, subject to coinsurance clause"; the provision as to coinsurance being written in by hand.

It is conceded that these applications thus made by the Home to the Royal for reinsurance asked for reinsurance only upon risks of the Home under policies which contained the coinsurance clause. The two policies issued by the Royal on the above applications describe the risks reinsured exactly, word for word, as the risk desired to be reinsured was described by the Home in the November application. Therefore, that the policies issued by the Royal described no other risks for reinsurance than those insured by the Home in policies issued upon the specific property named, and containing the coinsurance clause, seems to be a proposition too plain for argument.

The undisputed evidence in the case is to the effect that the difference in the premium between reinsurance on policies containing the coinsurance clause and reinsurance on policies not containing the coinsurance clause was one-half of 1 per cent. To illustrate: The application in the present instance by the Home was for insurance on policies containing the coinsurance clause, and, on acceptance, the premium was 1 per cent. If the application had been made for reinsurance upon policies upon the same property, but not containing the coinsurance clause, and that had been accepted, the premium would have been 1½ per cent. It is not disputed that the coinsurance clause affects the liability of the Royal about 100 per cent.; that is to say, the amount for which the Royal is liable, if the liability is not restricted to risks of the Home containing the coinsurance clause, is about twice as much as it would be if the liability should be restricted to risks of the Home containing the coinsurance clause. As I understand the opinion of the majority, they do not deny that the applications were for policies containing the coinsurance clause, or that the policies of the Royal in describing the risks reinsured describe only risks of the Home under policies containing the coinsurance clause; but, by reasoning which seems to me to be unsound, they reach the conclusion that the limitation of the risk is not material in this case. If representations affecting the amount of the premium and a stipulation restricting the liability of the reinsurer are not material in a reinsurance policy, the text-books on insurance ought to be rewritten, for now they are liable to confuse the bar and mislead some judges. It is true that the evidence shows that some insurance companies will not reinsure risks not subject to the coinsurance clause, and that some cotton men will not take insurance which contains such clause. The majority apparently deduce from this that a stipulation restricting reinsurance to risks subject to the coinsurance clause is immaterial. I do not think that the insurers and the insured would both make so much opposition on an immaterial matter.

The very ingenious brief of the learned counsel for the appellee, which seems to have compelled the judgment of the majority, and which is adopted as their opinion, has been carefully considered, but

I fail to find therein either argument or authority sufficient to overthrow the plain propositions of fact which ought to control the decision of this case. It is true, that, by reason of the blanks used, there are in the policies sued on many provisions not applicable to reinsurance; but is that any reason for rejecting those provisions which not only do apply, but which the parties were insistent in having inserted? The cases cited in the brief relate only to questions not disputed, and tend rather to cloud than enlighten the really disputed question. The fact is there are no adjudged cases which throw any light whatever upon the disputed questions in this case, and it is probably because no insurance company ever before disputed the materiality of the coinsurance clause as affecting the liability of a reinsurer who had stipulated therefor. The brief of counsel adopted by the majority further tends to confuse because it does not discriminate between the stipulation which was intended to regulate and control the adjustment between the Royal and the Home in case of loss and the stipulation describing the contract of the Home which was to be reinsured, and which pertained directly to the risk, treating the latter as immaterial in so far as they assume that there is a conflict.

It appears to be seriously contended by the learned counsel that "the Royal agreed to cover any risk that the Home might be willing to take," and they say that that is the meaning of the clause: "This policy to be subject to the same risks, conditions, valuations, indorsements, and mode of settlement as are or may be assumed or adopted by the Home Insurance Company, and the loss, if any, payable pro rata, at the same time and in the same manner as by said company." And this contention is only limited by allowing that the contract of the Royal must be applied to cotton in Shippers' Press, yard 1, and to losses by fire. The court has reformed the Royal's policy so as to excuse the Home from retaining any risk on cotton in Shippers' Press, yard 1, provided it holds risks on other property in the immediate neighborhood; and the court further holds that the coinsurance clause and differences in rates of premium were immaterial. Why not follow the argument of Messrs. Semmes and Browne to its logical conclusion, and hold broadly, as declared by them, that "the Royal agreed to cover any risk the Home might be willing to take"? Why should not the court say the contract of the Royal is reinsurance, and "it is agreed to cover any risks which the insurer might be willing to take," and "any printed stipulation having reference to the property itself, or the cash value thereof, cannot be applied to the contract between the reinsurer and reinsured, because the property is not subject-matter of their contract"? And, further, that whether the cotton insured by the Home was in one press or another really made no difference to the Royal, for the subject-matter of the reinsurance was risk, and not property, and wherever the latter was located was immaterial, because the Royal would have issued its policy of reinsurance just the same? If the opinion of the court is sound, but one good reason suggests itself for confining the liability of the Royal to cotton in Shippers' Press, yard 1, and that is that the

exigencies of the Home's case do not require that the liability should be extended to cotton elsewhere.

The result reached by the circuit court, and affirmed here, permits the Home Insurance Company to recover from the Royal Insurance Company reinsurance for which the Home Insurance Company never asked, for which it never paid, and upon risks never insured by the Royal Insurance Company, and which the Home agreed that the Royal should not insure.

The case of the Imperial Insurance Company against the Home Insurance Company presents the same questions, and should be ruled the same way.

For these reasons, I dissent from the opinion of the court in both cases.