**STONEWALL INSURANCE COMPANY, Appellant,**

v.

**MODERN EXPLORATION, INC., Appellee.**

No. 05–87–01154–CV.

Court of Appeals of Texas, Dallas.

July 26, 1988.

Kevin J. Keith, Dallas, for appellant.

Ronald O. Holman, Dallas, for appellee.

Before DEVANY, McCLUNG, and BAKER, JJ.

DEVANY, Justice.

Stonewall Insurance appeals from a partial summary judgment and final judgment of the trial court granted in favor of a third party beneficiary, Modern Exploration, of an excess umbrella liability policy issued by Stonewall to Dallas Pipe & Supply. Stonewall presents seven points of error: (1) the trial court erred in granting summary judgment in favor of Modern Exploration because fact issues exist as to whether the insured complied with the necessary conditions precedent to recover under the policy; (2) the trial court erred in granting summary judgment in favor of Modern Exploration because Modern Exploration failed to establish as a matter of law that Stonewall waived or is estopped from asserting its contractual rights; (3) the trial court erred by not granting summary judgment in favor of Stonewall because the uncontroverted summary judgment evidence established as a matter of law that the insured failed to comply with the conditions precedent to recover under the policy; (4) the trial court erred in granting summary judgment in favor of Modern Exploration because fact issues exist as to whether the insured gave prompt written notice of the occurrence to Stonewall as required by the policy; (5) the trial court erred in granting summary judgment in favor of Modern Exploration because fact issues exist as to whether the occurrence made the basis of the default judgment arose out of illegal acts by the insured; (6) the trial court erred in awarding damages to be recovered by Modern Exploration as a third party beneficiary under Stonewall's policy because Modern Exploration failed to prove through competent summary judgment evidence the amount of insurance coverage available on the date of judgment to indemnify the insured for Modern Exploration's claim; and (7) the trial court erred in awarding damages in excess of $130,127.13 less any future fees and expenses that qualify under the "ultimate net loss" provision of the policy. Because we agree with Stonewall's point of error number four, we reverse the judgment of the trial court and remand for a trial on the merits.

Stonewall issued an excess umbrella liability policy to Dallas Pipe & Supply with an effective policy period from March 10, 1981 to February 2, 1982. The primary policy of insurance was carried by Employers Casualty. Therefore, for claims in excess of the limits of the primary policy, the umbrella policy was issued by Stonewall to Dallas Pipe & Supply. Modern Exploration, one of Dallas Pipe & Supply's customers, purchased pipe from Dallas Pipe & Supply that ruptured causing damage on October 2, 1981. Modern Exploration first gave notice of the damage on October 5, 1981 to Dallas Pipe & Supply, following with a letter of October 12, 1981. In a letter dated December 29, 1981, Modern Exploration made a specific demand for damages in excess of the insured's $100,000 primary policy limit.

On March 26, 1982, Employers Casualty received a telephone call from Gary Yost, a representative of Modern Exploration, advising Employers that Modern Exploration had a claim against Dallas Pipe & Supply for defective pipe. Employers Casualty considered such claim reported to them as of April 1, 1982. Thereafter, in a letter dated July 20, 1982, and received on July 26, 1982, Employers Casualty informed Stonewall that Dallas Pipe & Supply had made a claim against Employers Casualty arising out of the Modern Exploration claim.

The annual aggregate property limit provided by Employers Casualty's primary policy was exhausted on or about August 9, 1982 by payment of other "bad pipe" claims against Dallas Pipe & Supply. In a reservation of rights letter dated November 22, 1982, Stonewall informed its insured, Dallas Pipe & Supply, of the following: (1) that the primary limit of liability provided by Employers Casualty had been exhausted; (2) that the aggregate limit of liability under the Stonewall policy had been reduced by a settlement payment of another "bad pipe" claim in the amount of $250,000; (3) that Stonewall was aware of eleven additional claims against Dallas Pipe & Supply, including the Modern Exploration claim of $160,000 which Employers Casualty had been handling under a non-

waiver agreement; (4) that like Employers Casualty, Stonewall was reserving its rights under the terms and conditions of the policy; and (5) that Stonewall "will render defense and coverage subject to the foregoing Reservation of Right, Non–Waiver and the terms and conditions of the policy wording."

On September 29, 1983, Modern Exploration filed its original petition against Dallas Pipe & Supply. Service of citation and suit papers was accomplished on Dallas Pipe & Supply. On September 17, 1982 Dallas Pipe & Supply became a debtor in bankruptcy in the federal court. In November, 1983, while attempting to locate and preserve documents of the "bad pipe" claims against Dallas Pipe & Supply, Stonewall learned that a lawsuit had been filed against Dallas Pipe & Supply with respect to the claim of Modern Exploration. On November 30, 1983 Stonewall, as insurer for Dallas Pipe & Supply, filed a motion in federal court to reinstate the automatic stay of litigation, previously lifted, with respect to the "bad pipe" proceedings instituted by Modern Exploration, Brock Petroleum, and Crude Resources against Dallas Pipe & Supply. During the January 5, 1984 hearing of Stonewall's motion to reinstate the automatic stay, the attorney for Modern Exploration announced in open court in the federal proceedings that he had already obtained a default judgment against Dallas Pipe & Supply on January 3, 1984. This was the first notice of the default judgment that Stonewall received.

In a letter dated January 11, 1984, Stonewall notified the attorney for the debtor Dallas Pipe & Supply and the bankruptcy trustee that demand was never made upon Stonewall to defend Dallas Pipe & Supply and that, if Stonewall were thereafter requested to consider assuming the defense of Dallas Pipe & Supply, the prejudicial default judgment would first need to be set aside by Dallas Pipe & Supply or its counsel before February 2, 1984. Dallas Pipe & Supply gave no response to this letter and took no action to set aside the default judgment. The default judgment became final on February 3, 1984.

Thereafter, Modern Exploration, as a third party beneficiary under the umbrella policy and as a judgment creditor, sued Stonewall to collect the award under the default judgment. A partial summary judgment was granted in favor of Modern Exploration. The parties stipulated to the amount of attorney's fees (but not the right to recover attorney's fees) and the amount of interest to be included in a judgment should Modern Exploration recover. A final judgment was entered in favor of Modern Exploration which was signed on July 17, 1987.

In reviewing a summary judgment record it is the duty of the appellate courts to apply the following rules:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in their favor.

*Wilcox v. St. Mary's University of San Antonio, Inc.,* 531 S.W.2d 589, 592–93 (Tex.1975).

With these standards in mind, we now address the merits of Stonewall's appeal. Paragraph seven under "CONDITIONS" of the policy states in relevant part:

Notice of Occurrence. When an occurrence takes place which, in the opinion of the Insured, involves or may involve liability on the part of the Company, prompt written notice shall be given by or on behalf of the Insured to the Company. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence.

As a third party beneficiary, Modern Exploration "steps into the shoes" of Dallas Pipe & Supply and is thus bound by the conditions precedent in the insurance policy. The beneficiary for whose advan-

tage a contract is made cannot acquire a better standing to enforce the contract than that occupied by the contracting party itself. *Waggoner v. Herring–Showers Lumber Co.*, 40 S.W.2d 1, 4 (Tex.1931). Since Stonewall is not questioning Modern's right to recover under Dallas Pipe's insurance policy under a third party beneficiary status, we may narrow our examination of the record to the issue of whether Modern Exploration met the conditions precedent under the policy, and, if not, whether Stonewall, by its actions and deeds, waived those conditions or is estopped from asserting those conditions in order to deny liability.

■ As outlined previously, the occurrence took place on October 5, 1981. Modern Exploration sent Dallas Pipe & Supply a demand letter on December 29, 1981. On March 26, 1982, Modern Exploration gave written notice to Employers Casualty about the claim. On July 26, 1982, Stonewall received its *first* notice of the occurrence from Employers Casualty. It is undisputed that Dallas Pipe & Supply *never* gave written notice of the occurrence to Stonewall as is required under the policy. It is also undisputed that Modern Exploration did not *directly* give notice to Stonewall.

Modern Exploration contends that it met all of the conditions precedent under the policy but, even if it did not meet all of the conditions precedent under the policy, Stonewall nevertheless waived or is estopped from asserting those conditions. We hold that there is a fact question of whether Modern Exploration gave prompt written notice of the occurrence to Stonewall and that Modern Exploration did not prove as a matter of law that Stonewall was estopped or waived compliance with this condition precedent.

■ Compliance with the provision that prompt written notice be given by the insured is a condition precedent, the breach of which voids policy coverage. *See Broussard v. Lumbermens Mutual Casualty*, 582 S.W.2d 261, 262 (Tex.Civ.App.— Beaumont 1979, no writ). Since the policy does not define the term "prompt," we construe the term as meaning that notice

must be given within a reasonable time after the occurrence. *See National Surety Corp. v. Diggs*, 272 S.W.2d 604, 607 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.). If we view the notice given by Employers Casualty to Stonewall about the lawsuit on July 26, 1982 as complying with the condition precedent that notice be given by or on behalf of the insured, then we next must determine if that notice was timely as a matter of law. *See White v. Transit Casualty Co.*, 402 S.W.2d 212, 215 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.) (the term "on behalf of" means someone has given notice who was authorized by the assured to act for him).

■ What constitutes a reasonable amount of time depends on the facts and circumstances in each particular case. *Broussard v. Lumbermens Mutual Casualty*, 582 S.W.2d at 262. We cannot hold as a matter of law that notice given by the primary carrier at least six months after the occurrence constitutes notice within a reasonable amount of time. *See Klein v. Century Lloyds*, 275 S.W.2d 95, 97 (Tex. 1955); *Broussard v. Lumbermens Mutual Casualty Co.*, 582 S.W.2d at 262; and *National Surety Corp. v. Diggs*, 272 S.W.2d 604, 607 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.). The purpose of the notice requirement is to enable the insurer to promptly investigate the circumstances of the accident while the matter is fresh in the minds of the witnesses, to prevent fraud, and to enable it to form an intelligent estimate of its rights and liabilities under the policy so that it may adequately prepare to defend any claim that may arise. *Weaver v. Hartford Accident and Indemnity Co.*, 570 S.W.2d 367, 369 (Tex.1978); *Employers Casualty Co. v. Glen Falls Insurance Co.*, 484 S.W.2d 570, 575 (Tex.1972). Since the condition is for the benefit of the insurer, the insurer can waive this condition. *Jackson v. National Flood Insurers Ass'n*, 398 F.Supp. 1383, 1388 (S.D.Tex.1974). We do not need to address the question of whether this notice was unreasonable as a matter of law since Stonewall does not present this point for our review. The evidence does, however, raise a fact question as to wheth-

er Modern Exploration gave prompt written notice of the occurrence to Stonewall as was required of Dallas Pipe & Supply under the policy.

 We must now determine whether Stonewall waived or is estopped as a matter of law from asserting noncompliance with the condition as a defense to liability. If Stonewall is estopped or has waived the defense of noncompliance with the condition, then it would be irrelevant that a fact question arises with respect to that issue. A waiver involves an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Hanover Insurance Company of New York v. Hagler*, 532 S.W.2d 136, 138 (Tex. Civ.App.—Dallas 1975, writ ref'd n.r.e.). Estoppel involves the situation in which the fault or conduct of one party induces the other to change its position for the worse. *Massachusetts Bonding and Insurance Co. v. Orkin Exterminating Co.*, 416 S.W. 2d 396, 401 (Tex.1967).

The first action that Stonewall took concerning the suit was to send a reservation of rights letter to Dallas Pipe & Supply four months after receiving notice. Another reservation of rights letter was sent by Stonewall on August 9, 1983. The only other action Stonewall took regarding the suit by Modern Exploration was to try to reinstate the stay in bankruptcy court in November, 1983 upon learning of the actual lawsuit. All of these actions occurred *after* Stonewall received notice approximately six months after the occurrence from Employers Casualty.

 A waiver of the notice requirement occurs when the insurer denies liability *within* the time limited for giving notice. *Austin Building Co. v. National Union Fire Insurance Co.*, 403 S.W.2d 499, 506 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r. e.). Conversely, a total denial of liability on any grounds *after* the time limited for giving notice would not constitute a waiver of the defense of unreasonably late notice. *See United States Fidelity and Guaranty Co. v. Bimco Iron and Metal Corp.*, 464 S.W.2d 353, 357 (Tex.1971). The denial of any liability after the time limited for giv-

ing prompt notice is not inconsistent with the right to rely on the failure to provide timely notice. *Id.*

Stonewall did not deny liability or refuse to defend the claim *before* it received written notice from Employers Casualty. Stonewall also did not investigate the occurrence or take any action that would, as a matter of law, estop it from asserting this policy defense. We hold that the record reveals considerable controversy as to whether any actions by Stonewall caused Dallas Pipe & Supply or Modern Exploration to rely to their detriment and change their position for the worse. Modern Exploration failed to prove, as a matter of law, that Stonewall's action caused it to waive or be estopped from asserting the policy defenses.

Consequently, fact issues exist as to whether Modern Exploration complied with the conditions precedent in the policy. We reverse the judgment of the trial court and remand for a trial on the merits.