# United States Court of Appeals
## for the Fifth Circuit

———————

No. 24-10392

———————

United States Court of Appeals
Fifth Circuit

**FILED**
August 14, 2025

Lyle W. Cayce
Clerk

United States Fire Insurance Company,

*Plaintiff—Appellant*,

*versus*

Unified Life Insurance Company,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-868

———————————————————————

Before Elrod, *Chief Judge*, Jones, and Stewart[*], *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Pursuant to a quota share reinsurance treaty, United States Fire Insurance Company ("U.S. Fire") agreed to indemnify Unified Life Insurance Company ("Unified") for a portion of claims made in connection with short-term medical insurance policies. In return, Unified had to give prompt notice of any claims "which, in the opinion of [Unified], may result in a Claim" for policy benefits, indemnity or damages, and which

———————————————————————

[*] Judge Stewart concurs in the judgment only.

No. 24-10392

subsequently "may materially affect the position of the Reinsurer." When Unified was sued in Montana, it failed to give notice until after the district court entered judgment for individuals and certified a class, and after the Ninth Circuit denied a petition for interlocutory appeal. Because Unified's delay was objectively unreasonable and material, it breached the Treaty and absolved U.S. Fire of its duty to indemnify. The judgment of the district court is REVERSED.

## BACKGROUND

Understanding this appeal requires background on the parties' reinsurance agreement, the Montana litigation, and the proceedings below.

### I.

The parties entered a Quota Share Treaty reinsurance agreement (several contracts comprising the "Treaty") in 2014 after Unified decided to enter a new market writing short-term medical insurance policies. As amended in 2015, the Treaty entitled U.S. Fire to 25 percent of the premiums Unified received on the policies. In exchange, U.S. Fire was obliged to reimburse Unified for 25 percent of Unified's "Net Loss," which meant Unified's "liability for Claims, and Claims Adjustment Expense, as respects policies covered hereunder." The Treaty defined "Claims" as "damages, benefits or indemnity that [Unified] pays or is liable to pay, whether by strict policy conditions or by way of compromise, as a consequence of [Unified's] issuance of the policies." "Claims Adjustment Expenses" signified "expenditures by [Unified] and as allocated to an individual claim or loss in investigating, resisting, settling, adjusting, auditing, managing and processing of Claims, including litigation expenses and pre or post-judgment interest," with some delineated exceptions. The Treaty, in short, required

2

No. 24-10392

U.S. Fire to indemnify 25 percent of Unified's cost on covered policies, *including* litigation expenses.[1]

The Treaty required Unified to give prompt notice of claims to U.S. Fire:

> [Unified] shall also advise [U.S. Fire] promptly of all Claims which, in the opinion of [Unified], may result in a Claim hereunder and of all subsequent developments thereto which, in the opinion of [Unified], may materially affect the position of [U.S. Fire].

The Treaty relatedly provided that U.S. Fire "shall have the right to participate, at its own expense, with [Unified] . . . in a defense and/or settlement of any Claims of which it may be interested."

## II.

Charles Butler purchased a short-term medical insurance policy in February 2016 and was diagnosed with cancer later that year. Under his policy, Mr. Butler was required to pay the difference between what his medical providers charged him and what Unified deemed the "reasonable and customary" charge it would reimburse the providers for his treatment. In April 2017, Mr. Butler and his wife sued Unified in the U.S. District Court for the District of Montana. They were represented by prominent Montana lawyer John Morrison, who previously served as State Auditor, Commissioner of Insurance and Securities, and President of the Montana Trial Lawyers Association. Raising multiple causes of action, the Butlers asserted that Unified underestimated what charges were "reasonable and

---

[1] Unified argues that the Treaty does not require U.S. Fire to cover litigation expenses until they are ultimately paid in connection with Claims. The timing question does not detract from the reinsurer's share of "Net Loss," which includes Unified's "liability for . . . Claims Adjustment Expenses," which includes "litigation expenses."

customary." Unified filed its answer to the Butlers' then-active complaint on June 1, 2018. But the Butlers further claimed that Unified used repricing software called Data iSight to systematically over-discount claims. This revelation prompted the Butlers in August 2018 to amend and assert a class action. The district court granted leave to amend, and the Butlers moved for class certification soon after.

In August 2019, the magistrate judge recommended granting partial summary judgment for the Butlers on their individual breach of contract claim because Unified underestimated the "reasonable and customary charges" for Mr. Butler's treatment. *Butler v. Unified Life Ins. Co.*, No. CV 17-50-BLG-SPW-TJC, 2019 WL 5302491, at *5–7 (D. Mont. Aug. 9, 2019). The magistrate judge reasoned that Mr. Butler's policy required Unified to discount his claims "based on the 'usual *charge* . . . in the geographic area,'" but Data iSight's figures were "based on amounts usually *accepted* as opposed to amounts usually *charged*." *Id.* at *7 (emphases in original). The magistrate judge relied heavily on testimony from Unified's own expert witness—a "claim manager" at Allied National, Inc., "a third-party administrator acting on behalf of Unified"—who repeatedly conceded that Data iSight focused on accepted amounts rather than usual charges. *Id.* at *2, 6.

The following month, the district court fully adopted the magistrate judge's recommendations as to the Butlers' individual claims. *Butler v. Unified Life Ins. Co.*, No. CV 17-50-BLG-SPW, 2019 WL 4745065, at *2 (D. Mont. Sept. 30, 2019). Separately, however, the magistrate judge had also recommended that the district court deny the Butlers' motion for class certification. The district court disagreed and instead granted it. *Butler v. Unified Life Ins. Co.*, No. CV 17-50-BLG-SPW, 2019 WL 4752360, at *3 (D. Mont. Sept. 30, 2019). Unified filed a petition for interlocutory appeal on class certification in the Ninth Circuit, but the petition was rejected on November 21, 2019. *See* FED. R. CIV. P. 23(f).

4

Unified notified U.S. Fire of the *Butler* litigation on December 20, 2019. In May 2020, U.S. Fire responded to Unified by advising it of the late notice and recommending that Unified (a) move for clarification and reconsideration in the district court and (b) retain experts who could better address the Data iSight methodology. Unified accordingly retained two experts recommended by U.S. Fire. The district court denied Unified's request for reconsideration and motion for clarification, and it struck the new expert report. *Butler v. Unified Life Ins. Co.*, No. CV-17-50-SPW-TJC, 2021 WL 1117765, at *5 (D. Mont. Mar. 24, 2021).

Unified settled the *Butler* litigation in October 2021 by establishing an $8 million class fund. Of that $8 million, the district court apportioned $2 million for class counsel's attorneys' fees. Unified first told U.S. Fire that it reached a settlement in July 2021. U.S. Fire responded that Unified's unreasonably late notice was prejudicial, and it refused indemnity for the settlement and attorneys' fees.

## III.

In April 2022, U.S. Fire sued Unified in the U.S. District Court for the Northern District of Texas. U.S. Fire sought a declaratory judgment that Unified's notice of the *Butler* litigation was untimely and prejudicial such that U.S. Fire was not obliged to indemnify Unified. Alternatively, U.S. Fire sought a declaration to avoid liability under the Treaty for its share of the attorneys' fees. Unified in turn requested a declaratory judgment confirming its compliance with the Treaty and right to be indemnified. Unified counterclaimed that U.S. Fire breached the Treaty. The parties consented to proceed before a magistrate judge. *See* 18 U.S.C. § 636(c).

Ruling on cross-motions for summary judgment, the court granted Unified's motion and denied that of U.S. Fire. It reasoned that Unified did not breach the Treaty because textually, prompt notice was triggered only

when Unified subjectively realized that the *Butler* litigation may require indemnification from U.S. Fire. Under that interpretation of the parties' agreement, the objective perspective of a reasonable reinsured was irrelevant. The court then found that because U.S. Fire provided no evidence about Unified's subjective intent, it could not prevail. The court alternatively held that even if Unified breached the Treaty, U.S. Fire was not prejudiced by any late notice and must indemnify Unified, including for the plaintiffs' attorneys' fees. Unified timely appealed.

## STANDARD OF REVIEW

"This court reviews a district court's grant of summary judgment, including on cross-motion, *de novo*." *Willis v. Barry Graham Oil Serv., L.L.C.*, 122 F.4th 149, 154 (5th Cir. 2024). "Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

## DISCUSSION

This court applies Texas law to govern the Treaty, as the parties selected. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990). "Our goal, sitting as an *Erie* court, is to rule the way the Texas Supreme Court would rule on the issue presented." *Hanson Prod. Co. v. Americas Ins. Co.*, 108 F.3d 627, 629 (5th Cir. 1997). To be relieved of its duty to pay Unified, U.S. Fire must show that (I) Unified breached the Treaty by failing to timely notify U.S. Fire of the litigation and (II) the breach was material, *i.e.*, that it prejudiced U.S. Fire. *See PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 632 (Tex. 2008). We discuss each requirement in turn.

### I.

In relevant part, the Treaty requires Unified to give prompt notice to U.S. Fire "of all Claims which, in the opinion of [Unified], may result in a

claim hereunder . . . ."  The parties dispute whether this provision required Unified to notify U.S. Fire of the *Butler* case only upon Unified's subjective belief that the litigation may result in a covered claim, or whether the language embodies an objective standard of realization by Unified.

Absent the phrase "in the opinion of [Unified]," this would be a straightforward case.  Courts have long construed provisions requiring an insured to give prompt notice of events that "may result in a claim" to require objective reasonableness both as to when the duty arises and how soon to notify the insurer.  *See, e.g.*, *Greyhound Corp. v. Excess Ins. Co. of Am.*, 233 F.2d 630, 634–36 (5th Cir. 1956); *Blanton v. Vesta Lloyds Ins. Co.*, 185 S.W.3d 607, 614–15 (Tex. App.—Dallas 2006, no pet.).  Here, the question is whether the phrase "in the opinion of" departs from an objectively determined duty to notify.  We hold that the Treaty did not depart from the ordinary rule.

The Treaty, "although a reinsurance, is a contract, which, like others, must be construed according to its terms."  *Sun Mut. Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 506, 1 S. Ct. 582, 596 (1883); *accord State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995).  "The primary goal of contract construction is to effectuate the parties' intent as expressed in the contract."  *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 198–99 (Tex. 2022).  While text is critical, "our quest is to determine, objectively, what an ordinary person using those words under the circumstances in which they are used would understand them to mean."  *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018).  "Accordingly, we must consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."  *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) (quotation marks and citation omitted).  And "the evident intent of the parties" is not only "derived from the words used"

and their context, but also from "the subject-matter to which they relate, and the matters naturally or usually incident thereto." *State Farm Mut. Auto. Ins. Co. v. Pan Am. Ins. Co.*, 437 S.W.2d 542, 544 (Tex. 1969) (quoting *Brown v. Palatine Ins. Co.*, 35 S.W. 1060, 1061 (Tex. 1896)). Finally, in the insurance context, the Supreme Court of Texas urges maintaining uniformity with other jurisdictions in interpreting "identical" or "very similar" policy provisions. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 496–97 (Tex. 2008) (quoting *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 824 (Tex. 1997)) (first quote); *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (second quote).

We reject a subjective standard in favor of an objective one for three reasons. First, an objective reading best interprets the Treaty as a whole and in light of background principles of quota share treaty reinsurance. Second, Texas authority, albeit sparse, suggests that Texas courts would agree that an objective standard controls. Third, most other jurisdictions faced with similar provisions apply an objective standard.

## A.

Both the Treaty and background reinsurance principles support the proposition that the "in the opinion of" clause did not displace the customary objective standard.

To be sure, Texas courts focus on the language the parties chose and "may neither rewrite the parties' contract nor add to its language" for the sake of achieving preferred results. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003). But the meaning of a clause must be considered along with the rest of the parties' agreement. The Treaty provision requires prompt notice to the reinsurer when, "in the opinion of" Unified, a covered claim may result and when subsequent developments may materially affect the reinsurer's position. This notice provision, particularly

in this quota share reinsurance contract, enables the reinsurer to assess its exposure for financial and underwriting purposes, and to participate in defending a claim as authorized by the Treaty. Notice is only valuable if it arrives "promptly," in time for action. The sophisticated parties to this agreement had to assume that "the opinion of" Unified, even if "subjective," would be grounded in its professional experience and familiarity with potential claims. Objective reality, in other words, was implicit in Unified's opinion. From this standpoint, referencing Unified's opinion of a potential claim actually reinforces what should be an objective standard for the duty to notify. The phrase "in Unified's opinion" is best interpreted to harmonize with the objective standard expressly connoted by the stock phrase requiring prompt notice "of all Claims which . . . may result in a Claim" under the Treaty.

In contrast, applying the perspective of unfettered subjectivity simply by reference to "the opinion of" Unified makes no sense in this context. Triggering the duty of prompt notice to the insured's subjective realization, whenever that happens, conflicts with the immediately following objective standard to determine that "a claim may result." The result of the conflict seriously impairs the purpose of the prompt notice duty. Issues about prompt notice do not arise unless the insured has failed to give prompt notice and an unexpectedly large claim has matured against the reinsurer. Using a purely subjective standard would mean that, by pleading ignorance or error about whether a claim "may [have] result[ed]," the insured who fails to give notice in time for the reinsurer to exercise its contract rights could nullify the notice requirement. Alternatively, the subjective standard would inject cost and complication into the parties' contract dispute by requiring discovery in litigation to ascertain when the insured's "opinion" arose. And in this case, because U.S. Fire introduced no evidence about the issue of Unified's

"opinion," the court found that it failed to bear its burden of proving when the insured realized that a covered claim "may result" from the *Butler* suit.

General principles of reinsurance comport with applying an objective test to Unified's "opinion" that the *Butler* case presented a claim that may be subject to reinsurance. Reinsurance is "an indemnity contract between a primary insurer, or the ceding insurer, and a second insurer, the reinsurer." NEW APPLEMAN ON INSURANCE LAW ("NEW APPLEMAN") § 71.02[1]; *see* STARING & HANSELL, LAW OF REINSURANCE ("STARING & HANSELL") § 1:5 (citing *Nat'l Sur. Corp. v. Brunswick Corp.*, 391 F.2d 26, 31 & n.4 (5th Cir. 1968)); *see also Phoenix Ins. Co. v. Erie & W. Transp. Co.*, 117 U.S. 312, 323, 6 S. Ct. 750, 755 (1886).[2] In treaty reinsurance, "the reinsurer agrees to indemnify the ceding insurer with respect to its entire underwriting activities for the agreed upon lines of insurance." NEW APPLEMAN § 71.03[1][a]. A treaty is "often in place before the actual risk is underwritten. . . . [T]he reinsurer does not scrutinize each individual risk, is obligated to accept all covered business, and often enters into a long-term relationship with the cedent." *Id.*

Treaty reinsurance may be classified as either "quota share" or "surplus share." STARING & HANSELL § 2.6, 2.7. Surplus share—or "excess of loss"—treaties require the reinsurer to "reinsure all or a percentage, usually high, of the excess of loss on the reinsured risks, above a stated amount." *Id.* § 2.7. In quota share arrangements, however, "a reinsurer takes a given percentage of the risk of each underlying policy and

---

[2] "There are two broad categories of reinsurance agreements: facultative reinsurance and treaty reinsurance." COUCH ON INSURANCE ("COUCH") § 9:3. A facultative policy insures only predetermined policies, enabling the reinsurer to better appreciate its risk at the outset. *Id.*; *see, e.g.*, *Imperial Fire Ins. Co. of London v. Home Ins. Co. of New Orleans*, 68 F. 698 (5th Cir. 1895).

also receives a certain percentage of the premiums charged, all within stated upper limits of liability." *Id.* § 2.6. "Modern quota share and excess of loss treaties . . . will almost always include some notice requirement in one of several forms." *Id.* § 17:1; *see, e.g.*, *Allemannia Fire Ins. Co. v. Fireman's Ins. Co. of Baltimore*, 209 U.S. 326, 327–28, 28 S. Ct. 544, 546 (1908).

The primary purpose of notice provisions is to "enable the reinsurer to associate in the defense and control of underlying claims." STARING & HANSELL § 17:1 (quoting *Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.*, 4 F.3d 1049 (2d Cir. 1993), *overruled on other grounds by Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83 (2d Cir. 2021)). While reinsurers usually have the right to help defend claims, it is standard for the reinsured to control litigation, including the decision to settle, which the reinsurer must "follow." *Id.* § 18:1; NEW APPLEMAN § 72.02[5][d].

The Treaty is archetypal of treaty reinsurance. Unified ceded a portion of its risk to U.S. Fire for a defined class of claims. U.S. Fire had the right to assist Unified in its defense of those claims, but Unified controlled litigation and settlement. In addition, Unified had to notify U.S. Fire of claims promptly so it could exercise its defense rights. The importance of notice in this quota share reinsurance arrangement bears emphasis. U.S. Fire agreed to indemnify 25 percent of all of Unified's loss on covered claims, beginning with the first dollar of loss. Because of first dollar loss exposure, U.S. Fire became liable not only for the ultimate outcome of disputed claims, but for meaningful litigation expenses at an early stage in their handling. As an experienced participant in the field of medical insurance, U.S. Fire was equipped, when afforded prompt notice, to assist in claims defense notwithstanding Unified's principal responsibility. Both Unified and U.S. Fire had skin in the game from the outset of litigation. The notice provision in the Treaty was critical for U.S. Fire as a quota share reinsurer. The fact that prompt notice was triggered when "in Unified's opinion" a claim "may

result" in a covered claim against U.S. Fire supplements, rather than detracts from the objective inquiry as to the duty.

B.

Only one Texas case bears on construing this notice provision as incorporating an objective standard. *See Stonewall Ins. Co. v. Modern Expl., Inc.*, 757 S.W.2d 432 (Tex. App.—Dallas 1988, no writ). In *Stonewall Insurance*, a reinsurer argued that because the reinsured failed to give timely notice of a covered claim, the reinsurer was no longer obliged to indemnify. Facing a notice provision substantially similar to that of the Treaty, the court did not deviate from the traditional objective approach to interpreting notice provisions. *Id.* at 435. Granted, the court of appeals did not explicitly consider the "in the opinion of" language (perhaps the reinsured failed to raise the issue) but the court's objective interpretation at least suggests that Texas courts would likely follow suit here.

In the absence of any other Texas authorities, one more insight may be gleaned indirectly from *United Founders Life Ins. Co. v. Carey*, 363 S.W.2d 236 (Tex. 1962). The state supreme court construed an insurance policy providing that coverage would only "be effective . . . if in the opinion of the authorized Officers of the Company . . . the Proposed Insured is insurable and acceptable for insurance under its rules and practices . . . ." *Id.* at 238. The court concluded that the plaintiff's heir could prevail if she showed, *inter alia*, "that a reasonably prudent and careful authorized officer of [the insurer] . . ." would find that the decedent was "insurable and acceptable for insurance under [the insurer's] rules and practices." *Id.* at 243. Construing the provision otherwise would allow the insurer to "arbitrarily refus[e] to proceed to the formation of an opinion" to deny coverage, and therefore the opinion cannot be "reached arbitrarily" and instead "it must have been reached in good faith." *Id.* In so holding, the court necessarily rejected the dissent's view that the opinion of the insurance company's officers

controlled without a requirement of objective reasonableness. *Id.* at 243–44 (Norvell, J., dissenting) (citing *Debenport v. Great Commonwealth Life Ins. Co.*, 324 S.W.2d 566 (Tex. App.—Dallas 1959, no writ)). In short, when faced with similar arguments about an insurance policy's use of the phrase "in the opinion of," the Supreme Court of Texas rejected a purely subjective approach.

*Stonewall* and *Carey* seem more like straws in the wind than authority to which this *Erie*-bound court is required to defer. Nonetheless, these straws bear witness to an objective standard for "in the opinion of" clauses attached to the well understood objective phrase that "a claim may result."

## C.

Moreover, the Supreme Court of Texas has "repeatedly stressed the importance of uniformity 'when identical insurance provisions will necessarily be interpreted in various jurisdictions.'" *Zurich Am. Ins. Co.*, 268 S.W.3d at 496–97 (quoting *Trinity Universal Ins. Co.*, 945 S.W.2d at 824). That admonition extends not only to identical provisions, but also to "very similar" ones used across jurisdictions. *RSUI Indem. Co.*, 466 S.W.3d at 118.

Provisions like this one have not infrequently been subject to litigation.[3] Most courts have concluded that prompt notice provisions using "in the opinion of" clauses still incorporate an objective standard.[4] And

---

[3] We do not consider instructive or analogous a number of cases cited by U.S. Fire that may appear at first glance to contain similar language but substantially depart from the language of the provision here. *See, e.g.*, *Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 272 ("Prompt notice shall be given . . . of any occurrence or accident which appears likely to involve this reinsurance . . . .").

[4] *See Am. Home Assur. Co. v. Am. Emp. Ins. Co.*, 384 F. Supp. 3, 6 (E.D. Pa. 1974); *Loblaw, Inc. v. Emps. Liab. Assur. Corp.*, 85 A.D.2d 880, 881–82 (N.Y. App. Div. 1981) (emphasizing that a reinsurer "requires notice . . . in order to facilitate the setting of reserves, to predict liabilities, and to protect itself by investigating such claims"), *aff'd* 442 N.E.2d 438 (N.Y. 1982); *Dan River, Inc. v. Com. Union Ins. Co.*, 317 S.E.2d 485 (Va. 1984);

other courts, in addition to *Stonewall Insurance*, have assumed that an objective standard applied when neither party argued otherwise.[5] We are aware of no cases in which courts assumed that this language incorporated a subjective standard.

Unified cites only one case in which a court interpreted these provisions as giving subjective discretion to a reinsured.[6] *See Zenith Ins. Co.*

---

*Ins. Co. of State of Pa. v. Assoc.'d Int'l Ins. Co.*, 922 F.2d 516, 521 (9th Cir. 1990); *Ins. Co. of Ireland, Ltd. v. Mead Reinsurance Corp.*, No. 88 Civ. 8779 (PKL), 1994 WL 605987, at *5–6 (S.D.N.Y. Nov. 4, 1994) (emphasizing that a subjective standard "would effectively insulate the insure[d] from its contractual duty to provide timely notice, as it could simply allege a failure to perceive the likelihood of a claim involving the reinsurance") (citing *Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 735 F. Supp. 492, 500–01 (S.D.N.Y. 1990)); *Allstate Ins. Co. v. Emps. Reinsurance Corp.*, 441 F.Supp.2d 865, 870–74 (N.D. Ill. 2005); *Emp. Reinsurance Corp. v. Laurier Indem. Co.*, No. 8:03-cv-650-T-17MSS, 2007 WL 1831775, at *12 (M.D. Fla. June 25, 2007).

Unified asserts that the *Allstate* court adopted its preferred subjective interpretation, but we do not read it that way. The *Allstate* court explained that the "in its judgment" phrase gave the reinsured "some discretion to determine when a claim might result," but the court found compliance with the notice provision because "there has yet to be an event or occurrence which caused [the reinsured], *in a reasonable exercise of judgment*, to believe that a claim under the Treaty might arise." 441 F.Supp.2d at 874 (emphasis added). Likewise, the *Laurier* court stated that the reinsured's "appraisal of when and whether" it was required to notify the reinsurer "controls *unless it is unreasonable as a matter of law*." 2007 WL 1831775, at *12 (emphasis added). State law set a lower bar for exercise of the reinsured's discretion, but there is an objective bar nonetheless. *Compare Columbia Cas. Co. v. TransFin Ins. Ltd.,* No. 2:05-CV-199, 2007 WL 9710915, at *9 (D. Vt. 2007) (declining to interpret the provision but finding any late notice did not prejudice the insurer).

[5] *See Stonewall Ins. Co.*, 757 S.W.2d at 435; *Fireman's Fund Ins. Co. v. ACC Chem. Co.*, 538 N.W.2d 259, 263–65 (Iowa 1995); *British Ins. Co. of Cayman v. Safety Nat'l Cas. Corp.*, 146 F.Supp.2d 585, 590 (D.N.J. 2001), *rev'd on other grounds*, 335 F.3d 205 (3d Cir. 2003); *Plantation Pipe Line Co. v. Stonewall Ins. Co.*, 780 S.E.2d 501, 505–07 (Ga. Ct. App. 2015); *Lamorak Ins. Co. v. Kone, Inc.*, 147 N.E.3d 132, 136, 139 (Ill. App. Ct. 2018).

[6] The court's research uncovered one other case that, at first glance, appears to support Unified's view. *Hatco Corp. v. W.R. Grace & Co.*, 801 F. Supp. 1334, 1369–70 (D.N.J. 1992) ("Under the terms of the notice provisions in the excess policies, written

*v. Emps. Ins. of Wausau*, 141 F.3d 300, 304–07 (7th Cir. 1998). *Zenith*, carefully read, supports U.S. Fire. The clause there required prompt notice to the reinsurer "of any event or development which, in the judgment of the Reinsured, might result in a claim." 141 F.3d at 305. The court reconciled the "objective" meaning of the word "promptly" with "the apparently subjective reference to [the reinsured's] own judgment a few words later." *Id.* The court concluded that "the better reading, which easily reconciles both phrases, is . . . that although the contract gave Wausau some discretion over when to provide notice and for what kinds of events, its discretion was tempered by an objective standard requiring notice to Zenith within a reasonable period of time of its realization that the claim could implicate the reinsurance policy." 141 F.3d at 306. *Zenith* approaches the issue from a different angle but also concludes that an objective standard must "temper" the reinsured's notice duty.

As this discussion reflects, other jurisdictions have almost uniformly held that an objective standard governs provisions that require notice when, in the opinion or judgment of the insured, a claim might result that would be covered by reinsurance. The Supreme Court of Texas would likely view these cases as furnishing a consensus that Texas should follow.

Based on an interpretation of the provision that makes sense of the whole policy and background reinsurance principles, the arguable support of Texas cases, and the interest in uniformity, we conclude that the Treaty provision required Unified to provide prompt notice to U.S. Fire of what a

---

notice was not required until Grace gained knowledge of 'an occurrence . . . which, *in the opinion of [Grace]*, involve[d] or may involve liability on the part of the [insurance] company.'") (emphasis in original). The *Hatco* court failed to explain why a subjective standard applied or is consistent with broader insurance principles. *See id.* But in any event, the court also referenced objective criteria for evaluating breach and otherwise made the scope of its nominally subjective standard unclear. *Id.*

reasonable reinsured would believe "may result in a claim" under the Treaty.[7]

## D.

Because Unified's duty to notify was not committed solely to its unfettered discretion, we must consider whether Unified breached the Treaty by providing notice to U.S. Fire that was unreasonably late as a matter of law.[8] The inquiry turns on when a reasonable reinsured would have known that its duty to provide prompt notice of the *Butler* litigation was triggered and whether Unified's notice was reasonably prompt after that point.

At several points in the *Butler* litigation, a reasonable reinsured should have realized that the litigation might implicate U.S. Fire's reinsurance. As of April 25, 2017, when the Butlers filed their first complaint, it could be contended that the notice duty was triggered. As explained above, the Treaty obliged U.S. Fire to indemnify 25 percent of Unified's "Net Loss," including litigation costs for defending claims involving covered policies. From the moment Unified became a defendant, litigation expenses within reinsurance

---

[7] The ordinary rule that insurance policy provisions are to be construed in favor of the insured does not apply here for at least two reasons. First, in Texas, that rule only applies upon a finding that the provision is ambiguous. *See RSUI Indem. Co.*, 466 S.W.3d at 118–19. The instant provision is not ambiguous. Second, whether such a presumption would even apply in the case of ambiguity is uncertain because the parties to the Treaty are sophisticated insurance companies. Couch § 9:15; *cf. Fid. & Deposit Co. of Md. v. Pink*, 302 U.S. 224, 229, 58 S. Ct. 162, 164 (1937) ("Here the two insurance companies stood upon an equal footing; both were experts in the field."); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 n.1 (Tex. 1998) (The ordinary rule is "justified by the special relationship between insurers and insureds arising from the parties' unequal bargaining power.").

[8] "Although the question of whether the requisite notice has been given promptly is generally one of fact," Texas courts and federal courts applying Texas law to reinsurance notice cases "have held it to be a matter of law if the delay has been unreasonable under the undisputed facts of the particular case." *Highlands Ins. Co. v. Emps. Surplus Lines Ins. Co.*, 497 F. Supp. 169, 171 & n.1 (E.D. La. 1980) (collecting cases).

coverage were accruing, broad claims had been raised by a prominent trial lawyer, and significant damages were sought. A second significant point in the litigation occurred when the Butlers were permitted to amend their complaint to assert a class action on behalf of Unified's insureds.

A third turning point in the litigation resulted from the magistrate's judge recommendation of partial summary judgment to the Butlers in August 2019, and the decision rested on an alleged systemic flaw in Unified's reimbursement formula to providers. One month later, of course, the fourth decisive point occurred when the district court overturned the magistrate judge's recommendation against class status, and the litigation's costs and risks immediately inflated. At any of these junctures it can be contended that a reasonable reinsured would have realized it must notify its reinsurer. Yet Unified delayed giving notice to U.S. Fire until December 20, 2019, nearly three months after the district court's orders, and one month after the Ninth Circuit denied Unified's petition for appellate review of the class certification order.

Under Texas law, this notice was not reasonably prompt.[9] Numerous Texas cases deem delays within the turning points noted above unreasonable.[10] Moreover, "an unexcused delay or delay because of a flimsy

_____

[9] The notice provisions discussed in these cases vary from requiring notice "immediately" to more flexible "as soon as practicable" language. The Supreme Court of Texas has construed all of these provisions as adopting the same reasonableness standard. *See New Amsterdam Cas. Co. v. Hamblen*, 190 S.W.2d 56, 58 (Tex. 1945); *see also Standard Acc. Ins. Co. v. Alexander, Inc.*, 103 F.2d 500, 501 (5th Cir. 1939). On the low end, the state supreme court has held that even a 32-day delay in notice was unreasonably prompt in an ordinary insurance case. *See Klein v. Century Lloyds*, 275 S.W.2d 95, 96–97 (Tex. 1955); *but see Members Mut. Ins. Co. v. Cutaia*, 476 S.W.2d 278, 279 (Tex. 1972) ("There may be a question as to soundness of the holding in *Klein* that the failure to give notice for 32 days was, as a matter of law, a failure to give notice as soon as practicable.").

[10] *See Dunn v. Travelers Indem. Co.*, 123 F.2d 710, 711–12 (5th Cir. 1941) (notice twenty-two months after accident was unreasonable); *Allen v. W. All. Ins. Co.*, 349 S.W.2d

excuse entitles the insurance company to judgment as a matter of law since delays of that type violate" prompt notice provisions. *Nat'l Union Fire Ins. Co. v. Bourn*, 441 S.W.2d 592, 595 (Tex. App.—Fort Worth 1969, writ ref'd, n.r.e.). Here, the only justification Unified gave for its tardiness was that it thought the Butlers' lawsuit was without merit because Unified properly processed and paid his claims pursuant to his policy.[11] But that does not explain Unified's failure to give notice as reinsured litigation expenses accrued and the risk of class action claims emerged. Unified breached the Treaty by providing unreasonably late notice of the *Butler* litigation to U.S. Fire.

---

590, 593 (Tex. 1961) (107 days); *McPherson v. St. Paul Fire & Marine Ins. Co.*, 350 F.2d 563, 566–67 (5th Cir. 1965) ("more than a year"); *Nan Travis Mem. Hosp. v. St. Paul Fire & Marine Ins. Co.*, 394 F.2d 112, 113 (5th Cir. 1968) (between three and four months); *Huddleston v. Traders & Gen. Ins. Co.*, 465 S.W.2d 418, 420 (Tex. App.—Texarkana 1971, writ ref'd n.r.e.) ("approximately one year"); *Lowe v. Emps. Cas. Co.*, 479 S.W.2d 383, 387 (Tex. App.—Dallas 1972, no writ) ("over 11 months"); *Highlands Ins. Co. v. Emps. Surplus Lines Ins. Co.*, 170, 172–73 (E.D. La. 1980) ("more than a year after satisfaction of the judgment and six and one-half years after the accident" was unreasonably late notice by reinsured to reinsurer under Texas law); *E. Tex. Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co.*, 575 F.3d 520, 527 (5th Cir. 2009) ("seven months after [suit] was filed"); *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, No. 3:16-CV-0465-B, 2017 WL 3115142, at *12 (N.D. Tex. July 21, 2017) (holding that thirty-month delay was unreasonable and collecting federal district court cases); *Charter Sch. Sols. v. GuideOne Mut. Ins. Co.*, 407 F.Supp.3d 641, 650–51 (W.D. Tex. 2019) (fifteen months).

[11] Unified relies on an Eleventh Circuit case holding that an insured's erroneous evaluation of whether a claim would trigger the reinsurance agreement, if "based upon advice from competent attorneys," might be reasonable. *Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co.*, 111 F.3d 852, 862 (11th Cir. 1997). Even assuming this case is relevant to Texas law, the case involved an excess-of-loss reinsurance agreement in which the insured necessarily relied on advice of counsel. Further, Unified's president conceded in his deposition that Unified had no "specific formal process" when asked about Unified's "procedure for notifying reinsurers of claim litigation." This statement is at odds with a conclusion that Unified's performance of its duty to notify was reasonable.

No. 24-10392

II.

Unified's unreasonably late notice relieves U.S. Fire's duty to indemnify, however, only if U.S. Fire proved prejudice from a material breach of the Treaty. *See PAJ*, 243 S.W.3d at 631.[12] U.S. Fire has the burden to demonstrate prejudice. *See Fin. Indus. Corp v. XL Specialty Ins. Co.*, 285 S.W.3d 877, 878–79 (Tex. 2009) (citing *PAJ*, 243 S.W.3d at 631).

A.

"[T]he materiality of an insured's breach is determined by several factors, including the extent to which the breach deprived the insurer of the benefit that it could have reasonably anticipated from full performance by the insured." *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 768 (Tex. 2014) (citing *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 n.2 (Tex. 1994)). Conversely, "[i]f the insurer receives its reasonably anticipated benefit despite the insured's breach, the breach is immaterial, the insurer is not prejudiced, and the insurer is not excused from performance." *Id.* In late notice cases, "the recognized purposes of the notice requirements form the boundaries of the insurer's argument that it was prejudiced; a showing of prejudice generally requires a showing that one of the recognized purposes has been impaired." *Berkley Reg. Ins. Co. v. Philadelphia Indem. Ins. Co.*, 690 F.3d 342, 348 (5th Cir. 2012) (quoting *Blanton*, 185 S.W.3d at 612). The Treaty notice provision specifically enabled U.S. Fire to aid in the defense of the *Butler* litigation.

To determine whether U.S. Fire received that "reasonably anticipated benefit," we examine the "contours of prejudice" established by Texas courts. *See Greene*, 446 S.W.3d at 768 (first quote); *Berkley*, 690 F.3d

---

[12] We do not consider U.S. Fire's alternative argument that it need not establish prejudice because Unified's breach was allegedly in bad faith.

at 350 (second quote). The Supreme Court of Texas has found prejudice in several instances. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 608–09 (Tex. 2008) (notice was wholly lacking); *Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 166 (Tex. 1993) (per curiam) (no notice until a default judgment became final); *accord Ratcliff v. Nat'l Cnty. Mut. Fire Ins. Co.*, 735 S.W.2d 955, 958–59 (Tex. App.—Dallas 1987, writ dism'd w.o.j.) (Hecht, J.); *Harwell v. State Farm Mut. Auto Ins. Co.*, 896 S.W.2d 170, 174 (Tex. 1995) (insured appeared at trial but offered no evidence or defenses).

Lower Texas courts have found prejudice in a number of scenarios. Thus, there may be prejudice when notice is only given as a trial is "rapidly approaching." *Filley v. Ohio Cas. Ins. Co.*, 805 S.W.2d 844, 847 (Tex. App.—Corpus Christi 1991, writ denied). Prejudice results when an insurer notifies its reinsurer only after settling the underlying claims. *Maryland Cas. Co. v. Am. Home Assur. Co.*, 277 S.W.3d 107, 117 (Tex. App.—Houston [1st Dist.] 2009, no writ). The same goes for notice after issuance of an arbitration award. *C.L. Thomas, Inc. v. Lexington Ins. Co.*, No. 13–13–00566–CV, 2014 WL 4494516, at *5 (Tex. App.—Corpus Christi 2014, no writ) (mem. op.). And a non-final default judgment becomes prejudicial when due to a heightened standard of finality, it cannot be set aside for a new trial. *Kimble v. Aetna Cas. & Surety Co.*, 767 S.W.2d 846, 850–51 (Tex. App.—Amarillo 1989, writ denied).

The district court here relied on another district court opinion that considered Texas courts to have "definitively and narrowly defined" sufficient prejudice. *See St. Paul Guardian Life Ins. Co. v. Centrum G.S. Ltd.*, 383 F.Supp.2d 891, 902–03 (N.D. Tex. 2003)). That view is unduly narrow. This court has been especially apt to find prejudice where an insurer has contractual settlement rights. *See Motiva Enters., LLC v. St. Paul Fire & Marine Ins. Co.*, 445 F.3d 381, 386 (5th Cir. 2006); *accord Coastal Refin. &*

*Mktg., Inc. v. U.S. Fidelity & Guar. Co.*, 218 S.W.3d 279, 290–91 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (prejudice more easily shown when insurer has settlement right).  But in *Berkley*, for example, we found a fact issue as to prejudice where notice given after a mediation and jury verdict prevented the reinsurer from participating in either aspect of the underlying litigation.  690 F.3d at 348–52.  In so holding, we did not cite to a Texas case with identical facts, but instead reviewed the landscape of Texas law on prejudice to "distill various principles applicable to the instant case."  *Id.* at 349.

## B.

Following this fact-intensive approach, we hold that U.S. Fire's right to assist in Unified's defense of the *Butler* litigation was severely prejudiced when Unified provided notice after summary judgment had been awarded to the individual plaintiffs, after a class was certified, and after a petition for interlocutory appeal on class certification was denied.  After receiving notice, U.S. Fire did what it could consistent with its Treaty right to assist in Unified's defense.  Observing that Unified's expert testimony was liberally cited by the district court in rejecting Unified's arguments, U.S. Fire advised Unified to retain new experts and identified two experts.  U.S. Fire also recommended that Unified should move for reconsideration and clarification by the district court.  Unified followed all of this advice.

But the advice arrived too late to change the course of the litigation.  The new expert report was struck for untimeliness because Unified was "afforded adequate opportunities to raise these arguments, before the expert report deadline in 2018, or even in 2019 when the summary judgment and class certification motions were argued before [the magistrate judge]."  *Id.* at *4.  And the district court denied the motion for leave to seek reconsideration because Unified could not meet the heightened standard

imposed by a typical local court rule.[13]   The district court reasoned that "[n]othing in the record or Unified's motion convinces the Court that Unified could not have presented" its new arguments regarding Data iSight at an earlier stage in the litigation. *Butler*, 2021 WL 1117765, at *2.

Based on these facts, U.S. Fire was plainly deprived of the benefit it expected from the Treaty's notice provision. *See Hernandez*, 875 S.W.2d at 693 & n.2; *Berkley*, 690 F.3d at 349.  U.S. Fire was prejudiced in several concrete ways by deprivation of its Treaty right to assist Unified's defense. Because it did not receive notice until after an adverse summary judgment, the defendant's ability to introduce new expert testimony or obtain a different disposition was radically narrowed. *See, e.g.*, *Kimble*, 767 S.W.2d 846 at 850–51 (notice followed default judgment).  U.S. Fire's receipt of notice after summary judgment was more prejudicial than notice given with trial "rapidly approaching." *Filley*, 805 S.W.2d at 847; *see also Greyhound*, 233 F.2d at 636.

Unified counters that there was no prejudice because the district court left the door open for further litigation related to class damages. *See Butler*, 2021 WL 1117765, at *4.  But under various facts, Texas cases have found prejudice when notice is given while litigation is ongoing. *See Filley*, 805 S.W.2d 844 at 847; *Kimble*, 767 S.W.2d at 850–51.  Here, U.S. Fire failed to receive "the benefit that it reasonably could have anticipated from full performance by the insured." *Greene*, 446 S.W.3d at 768 (citing *Hernandez*,

---

[13] District of Montana Local Rule 7.3(b) requires a movant to establish that "(1)(A) the facts or applicable law are materially different from the facts or applicable law that the parties presented to the court before entry of the order for which reconsideration is sought, *and* (1)(B) despite the exercise of reasonable diligence, the party applying for reconsideration did not know such fact or law before entry of the order; *or* (2) new material facts arose or a change of law occurred after entry of the order." *Butler*, 2021 WL 1117765, at *2 (quoting D. Mont. L.R. 7.3(b)).

875 S.W.2d at 693 n.2). Significantly, Unified's then-president conceded that the company only notified U.S. Fire once it determined that it "lost all of its claims on, like, decertifying the class" because "essentially finally the Court made judgments and made judgments on several items, which at that point in time we . . . felt like we weren't going to win in district court." That Unified gave notice only upon determining it had lost or was likely to lose indicates not only severe prejudice to U.S. Fire but indifference, at best, toward the provision enabling U.S. Fire to participate in claim defense.

Unified also argues that prejudice is lacking because the *Butler* district court explained that it was "not persuaded that additional evidence of Data iSight's methodologies . . . would have materially affected the question of whether Unified breached its insurance policy . . . ." 2021 WL 1117765, at *3. Putting aside the district court's disregard of the expert testimony because of untimeliness, had the testimony recommended by U.S. Fire entered the record, it would have been considered during the Ninth Circuit's *de novo* review of summary judgment. Instead, the district court's exclusion of the new testimony could only be subject to appellate review for an abuse of discretion. *See Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 594 (9th Cir. 2018). Notice only after the case progressed to that more challenging posture was prejudicial. *Kimble*, 767 S.W.2d 846 at 850–51.

Further establishing prejudice, the delayed notice also necessarily weakened Unified's and U.S. Fire's position in the eventual settlement negotiations. The particular relationship of the parties is also relevant here. Unified had no previous experience in short-term medical insurance. U.S. Fire did have experience in the area and claims that Unified contracted with U.S. Fire because of "its experience in reinsuring other health insurers and

writing direct health insurance itself."[14]   This context heightened the importance of U.S. Fire's right to associate pursuant to the Treaty.

Unified argues that U.S. Fire's contentions merely establish the theoretical possibility of prejudice because the outcome of the *Butler* litigation would not have been different had there been prompt notice. U.S. Fire did not, however, bear that counterfactual burden; prejudice consisted of inadequate notice and denial of its contractual right to participate in the litigation defense. At several turning points in the *Butler* litigation, timely notice to U.S. Fire would have fulfilled the Treaty and forestalled this litigation.

Finally, Unified contends that if U.S. Fire was not unprejudiced as a matter of law, then prejudice must be a fact issue warranting remand. In support of that view, Unified attempts to exhaustively distinguish the cases cited above where courts found prejudice as a matter of law. This attempt to individually distinguish factual minutiae in each case misses the forest for the trees. As *Berkley* explained, we "distill various principles applicable to the instant case" rather than try to find an identical precedent. 690 F.3d at 349. The overarching principle in Texas law is that it is appropriate to find prejudice as a matter of law where a reinsurer is unable to exercise its right to associate in its reinsured's defense to nearly the same extent as it would be absent the breach.

In sum, the *Butler* court rejected Unified's arguments because of the late stage of litigation in which they were made; Unified advanced untimely

---

[14] For this proposition, U.S. Fire cites the deposition of the Chief Operating Officer of the Accident and Health Division of Crum & Forster, the holding company containing U.S. Fire. Unified does not contradict U.S. Fire's claim and even cites it as a reason for rejecting U.S. Fire's argument—which we do not reach here—that it need not show prejudice because Unified acted in bad faith.

arguments only upon the advice of U.S. Fire; and U.S. Fire's advice was untimely only because of Unified's breach of the Treaty. That chain renders Unified's breach prejudicial and material. A material breach absolves U.S. Fire of its duty to indemnify Unified. Because the district court held otherwise, we REVERSE.